### MOHLER, et v MOHLER, et

Ohio Appeals, 9th Dist, Lorain Co

No 805. Decided Nov 20, 1936

Stetson & Butler, Elyria, for appellees.
Frank Wilford, Elyria, for appellant.

### OPINION

By FUNK, PJ.

This is an action for the forfeiture of a life estate in certain real estate. The principal facts are substantially as follows:

The defendant L. J. Mohler, who is now 79 years old, and his wife, Alice C. Mohler, now deceased, lived for more than 30 years on a farm consisting of 210 acres. Said L. J. Mohler and his said wife each owned the undivided one-half of 160 acres of said farm, and each owned the whole fee to 25 acres of land adjoining said 160 acres, which lands constituted the other 50 acres of said farm.

This controversy involves the undivided one-half of said 160 acres, which contained all the buildings used and occupied by Mr.

and Mrs. Mohler in connection with said 210 acres, and the 25 acres which belonged to Mrs. Mohler in fee. They had three sons. who are parties to this action and who are now approaching middle life.

Said Alice C. Mohler executed her will in Setember, 1929, and died in June, 1930. Her will contained the following provisions:

"Second: I give, devise and bequeath to my husband, L. J. Mohler, the use of all my estate, whether personal or real estate, for and during the term of his natural life, but on condition that the taxes on the same shall be kept fully paid at all times, and the buildings kept fairly insured and the premiums paid. * * *"

The remaining part of said item second pertained to the distribution of her estate, and provided that "At the death of my said husband I give and bequeath" three-sevenths thereof to the plaintiff G. Irving Mohler, and two-sevenths each to the plaintiff John E. Mohler and the defendant Rollin J. Mohler.

Item one provided only for the payment of her debts and funeral expenses, and item three appointed two of the sons, to wit, the defendant Rollin J. Mohler, and the plaintiff G. Irving Mohler, executors of her estate, with authority to do certain things unimportant in this case, as her estate has been duly settled and closed.

The evidence discloses that the plaintiff G. Irving Mohler lived with his parents and operated said farm for them for some years before the death of the wife and mother, Alice C. Mohler, and for some considerable time after her death, when he moved off of said farm, and the defendant, Rollin J. Mohler, with his wife and children, moved onto said farm for the purpose of operating it for the father and making a home for him.

Plaintiffs claim that the provisions of said will, whereby defendant L. J. Mohler, by the observance of certain conditions, was to have a life estate in the undivided one-half of said 160 acres, and the fee to decedent's 25 acres, have been violated: first, by said defendant's failure to keep the taxes "fully paid"; second, by said defendant's failure to keep the buildings "fairly insured"; and third, by the commission of waste as the result of the following conduct by both defendants; permitting the buildings and fences to deteriorate and become out of repair; selling substantially all the live stock and crops from said farm; and failing to properly fertilize said farm by keeping sufficient live stock to produce manure to be used on said farm.

These contentions present the following questions:

First, Was the failure of said life tenant to pay the taxes promptly each six months, as they became due, such a violation of the provision of said will concerning the payment of taxes as would warrant a forfeiture of said life estate?

It will be first noted that the provision of said will as to the payment of taxes is substantially the same as §5680, GC, which requires a life tenant to pay the taxes for the lands of which he is seized for life, so that said will requires little, if any, more of the life tenant than the law would have required of him without said provision in the will.

The evidence before us shows that said life tenant was delinquent for the payment of a part of the taxes on all of said lands at the time this cause was commenced, but that he had been paying on the delinquent taxes in installments as he could, that between the time of the commencement of the suit and the trial in the court below he had paid a considerable amount on said taxes, and that there were no unpaid delinquent taxes at the time of the trial in this court.

Under such situation, and in view of the fact that the will does not definitely fix a specific time within which the taxes must be paid to keep within the provisions of said will, and in view of the provisions of §5688, GC, concerning when a life tenant becomes delinquent for the nonpayment of taxes, which section provides that "If any person, seized of lands * * * for life, neglects to pay the taxes thereon, so that such lands are sold for the payment thereof, and within one year after such sale does not redeem them, according to law, he shall forfeit to the person or persons next entitled to such lands in remainder or reversion, all the estate which he has in such lands * * *," we do not think that a court of equity would be justified in finding that said life tenant had forfeited his life estate for failure to pay taxes, and especially so under the economic depression during the last few years, which covered the period of time of which the claim is made that the taxes on said farm were not paid as provided in said will.

Second, Did said life tenant fail to keep the buildings "fairly insured" according to the terms of said will?

As the life tenant carries $1,000 fire insurance on the dwelling house now on the farm, which amount is all that the insurance company will carry on said dwelling, and there being no claim that the house that burned in October, 1934, was not fairly insured, we find no complaint concerning the amount of fire insurance carried on the buildings; the only complaint pertaining to tornado or windstorm insurance, because the barn on said farm was blown down and totally destroyed as a barn by a severe windstorm in April, 1934, with no windstorm insurance.

Counsel for plaintiffs contend that, as the evidence shows that at the time the will was executed there was both fire and tornado or windstorm insurance on the buildings, said life tenant violated the provision of the will requiring the buildings to be "kept fairly insured," although the undisputed evidence shows that the tornado or windstorm insurance expired prior to the death of testatrix, and that it was not renewed either during her lifetime or after her death.

There being nothing in the will to indicate the kind of insurance the life tenant should carry, and the windstorm and tornado insurance having been dropped during the life of said testatrix, we do not find any violation of the provisions of the will in respect to the insurance on the buildings that would require a forfeiture of the life estate.

Third, Has the life tenant permitted such waste as should require the forfeiture of his life estate?

It should be first noted that the common law rule as to waste does not prevail in Ohio; that there was no forfeiture of a life estate for waste prior to the enactment of the statute in Ohio in 1887, and that many things that were considered waste under the common law rule would not be considered waste under our statute. **Kent v Bentley, 10 O.C.C. 132, 6 O.D. 457; 40 O. Jur., "Waste," §1, p. 1328.**

There being nothing in the will about keeping up repairs on said farm, or the manner in which the land should be farmed, the question of whether the life tenant has permitted such waste as would forfeit his life estate must be determined by what would be held to be waste within the purview of §10503-23, GC. There is no claim of voluntary waste; the only claimed waste complained of is permissive waste.

While there are established rules as to what may be held to be waste under the statute, the question as to whether waste has been committed in a given case is to be determined largely in view of the situation of the property and the particular facts and circumstances appearing in each case. Plaintiffs claim that defendants did not use the material left from the destruction of the barn by wind to the best advantage and reconstruct as large a barn as might have been done; and complain that defendants do not keep as much live stock upon the farm as good husbandry would require.

Defendants claim that they reconstructed a building for live stock as best they could from the material left of the barn, after it was blown down by said windstorm, and that they are not able to keep as much live stock on the farm as they did formerly, for the reason that there was not sufficient material left of the barn, after said windstorm, to construct buildings sufficient to shelter and protect from the weather the amount of live stock formerly kept on said farm, and that therefore they are not to be held accountable for not keeping as much live stock on the farm as was kept prior to the destruction of the barn by windstorm.

From the evidence before us, it appears to be largely a question of opinion as between plaintiffs and defendants as to whether the material left of the barn, after its destruction by windstorm, was used to the best advantage.

There being no claim that the small house that burned down in October, 1934, was not "fairly insured" or that it burned down by reason of any fault of the life tenant, the only complaint pertaining to the burning of the house is that the money due from the insurance company therefor was not used to construct another dwelling house on said farm.

The life tenant testified in substance that the amount of the insurance on the house that burned was not enough to build a new house in place of the one destroyed by fire; that he offered to co-operate with his said sons and use said insurance money to construct a new dwelling house if they would help him to finance the construction of the same, but that they refused to assist the life tenant in so doing, and that the insurance company, under the terms of said insurance policy, then applied the money due for the insurance on said house to overdue taxes, and interest and principal on the mortgage on said farm. There is no

denial of that testimony of the life tenant.

There is in Ohio a well-recognized rule that, in the absence of a special provision in the will devising a life tenancy, the life tenant is not required under our statute to reconstruct buildings destroyed by what is termed an "act of God," or to rebuild in case of the accidental destrucion of a building by fire through no fault of the life tenant.

Under this rule and the evidence before us pertaining to the destruction of the barn by windstorm, and the small dwelling house by fire, we do not think a court of equity can say that the manner in which said life tenant handled the situation with which he was confronted by said fire and windstorm is such as to justify a forfeiture of his life estate.

That leaves only the question as to whether the operation of said farm by the life tenant is such poor husbandry as would justify a court of equity in ordering a forfeiture of the life estate of defendant L. J. Mohler.

While it may be that said life tenant is not operating said farm in as high a degree of efficiency as an owner of the fee might do if he had sufficient financial backing to construct a suitable barn on said farm and put the amount of live stock on said farm that was formerly kept thereon, yet when taking into consideration the fact that said life tenant owns in fee the undivided one-half of 160 acres of said 210-acre farm, and owns in fee 25 acres of the remainder of said 210-acre farm, thus leaving only the remaining 25 acres of said 210-acre farm that he occupies as a mere life tenant, and considering the handicap he is under by reason of the destruction of the barn by forces over which he had no control, the burning of the house through no fault of his, and the advanced age of said life tenant, the fact that the provisions of the will are all conditions subsequent, and the fact that there is nothing in the will providing for a forfeiture of said life estate for failure to comply with any of the provisions thereof, together with all the surrounding facts and circumstances as shown by the evidence, and the general rule that the law disfavors or abhors a forfeiture, we do not think that the manner in which said life tenant is operating said farm is so unreasonable and improper as to constitute such poor husbandry as would amount to waste within the purview of our statute; at least,

it does not amount to such waste as would justify a court of equity in ordering a forfeiture of said life estate.

We may further say that we have examined the authorities cited by counsel for plaintiffs, and that, while they are probably good law under the facts in each particular case, they have little, if any, application to the instant case.

A decree may accordingly be prepared on the issues joined in favor of the life tenant.

STEVENS, J., and WASHBURN, J., concur in judgment.