[Cite as *Palmer v. Mossbarger*, 2015-Ohio-231.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


MARC A. PALMER,                          :

    Plaintiff-Appellant,                :

- vs -                                   :

JANYTH MOSSBARGER, et al.,               :

    Defendants-Appellees.              :

CASE NO.   CA2014-04-011

O P I N I O N
1/26/2015


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVH20130071


Farthing & Stewart LLP, John H. Farthing and Brian S. Stewart, 233 South Scioto Street, Circleville, Ohio 43113, for plaintiff-appellant

Kiger & Kiger, James A. Kiger, 132 South Main Street, Washington C.H., Ohio 43160-2275, for defendant-appellee, Janyth Mossbarger

Richard G. Murray, II, 88 West Mount Street, Columbus, Ohio 43215, for defendant-appellee, Tamara Moulton


**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Marc Palmer, appeals a decision of the Madison County Court of Common Pleas granting summary judgment to defendant-appellee, Janyth Mossbarger, in an action for waste regarding a 64-acre farm in Mt. Sterling, Ohio.

{¶ 2} In May 2000, Mossbarger's husband died, leaving her a life estate in the

property, with remainder to three of his relatives from a previous marriage. Timothy Mossbarger is one of the relatives and remaindermen. Mossbarger and her husband did not live on the property, but rather rented the land and the residence. After her husband's death, Mossbarger continued to cash rent the land and the residence as a source of income. Mossbarger is 78 years old. In 2011, Palmer offered to cash rent the land for $12,700 a year. Mossbarger rejected the offer. Subsequently, on August 26, 2011, Palmer purchased Timothy Mossbarger's one-third remainder interest for $112,500. Upon acquiring his one-third interest, Palmer began making demands on Mossbarger via two letters from his attorney.

{¶ 3} First, in September 2011, Palmer requested the name and address of the tenants, as well as documents regarding the fertility of the soil, harvest and yields from previous years, written rental agreements, and insurance policies. Palmer also expressed his desire to purchase Mossbarger's life estate interest. Mossbarger ignored Palmer's requests. Then, in November 2011, Palmer requested the same documents, again expressed his desire to purchase Mossbarger's life estate interest, and threatened to sue her for failing to protect his one-third interest in the property. Once again, Mossbarger ignored Palmer's demands.

{¶ 4} On March 18, 2013, Palmer filed a complaint against Mossbarger, alleging she was committing waste to the property by failing, inter alia, to maintain, repair, or demolish buildings on the property, obtain insurance coverage, inspect the heating, well, and septic system, and provide Palmer with copies of the written rental agreements, recent soil tests, yields, and fertilizer invoices. The complaint alleged that Mossbarger's failure to protect and preserve the property constituted voluntary and permissive waste under R.C. 2105.20 and consequently sought the forfeiture of Mossbarger's life estate interest.

{¶ 5} Mossbarger moved for summary judgment in February 2014. Attached to her

motion were, inter alia, an affidavit from her son, Jim East, the purchase agreement between Palmer and Timothy Mossbarger, and the first page of Palmer's responses to interrogatories. Palmer filed a memorandum in opposition to Mossbarger's motion for summary judgment. Attached to his memorandum were photos of the property taken in August 2012 and a Soil Analysis Report from November 2012. Mossbarger filed a response to Palmer's memorandum and attached Palmer's responses to interrogatories in their entirety. Mossbarger's deposition, taken in January 2014, was filed with the trial court on March 6, 2014.

{¶ 6} On March 11, 2014, the trial court granted Mossbarger's motion for summary judgment. Upon finding that Palmer's interest in the property did not begin until August 26, 2011, when Palmer purchased the property in "as is" condition, the trial court held that:

> There is no evidence presented in either * * * pleadings that would allow reasonable minds to conclude that the condition of the property has in any way deteriorated from the time that [Palmer] purchased his remainder interest. [Palmer] is primarily relying on photos taken sometime prior to August 27, 2012 and soil samples taken November 7th and analyzed on November 14, 2012. There is nothing in the pleadings or exhibits that would allow a reasonable person to conclude that the property is in any different condition today as it was on the date that [Palmer] purchased his interest. The Court concludes that the doctrine of caveat emptor applies and therefore [Mossbarger's] motion for summary judgment is granted.

{¶ 7} Appellant appeals, raising one assignment of error:

{¶ 8} THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 9} Palmer argues the trial court erred in granting Mossbarger's motion for summary judgment because (1) as the moving party, Mossbarger failed to meet her initial burden of demonstrating she did not commit any acts of waste; (2) by contrast, Palmer met his burden of demonstrating there is a genuine issue of material fact as to whether

Mossbarger committed acts of waste; and (3) the trial court improperly applied the doctrine of caveat emptor to bar Palmer's claim of waste of a life estate.

{¶ 10} At the outset, we find the trial court erred in applying the doctrine of caveat emptor to bar Palmer's claim of waste. The doctrine of caveat emptor applies to sales of real estate relative to conditions open to observation. *Kearns v. Huckaby*, 12th Dist. Butler No. CA2005-12-507, 2006-Ohio-5196, ¶ 17. As this court has stated, "[w]here disputed conditions are discoverable and the purchaser has the opportunity for investigation and determination without concealment or hindrance by the seller, the purchaser has no just cause for complaint." *Pearson v. Ewing*, 12th Dist. Madison No. CA2013-07-026, 2014-Ohio-645, ¶ 21.

{¶ 11} In the case at bar, Palmer is not alleging the property was in a worse condition when he purchased the remainder interest in August 2011 than the seller, Mossbarger's stepson, represented it to be. That is, Palmer is not attacking the condition of the property prior to or at the time of his purchase. Rather, Palmer challenges the manner in which the property has been treated since his purchase in August 2011 and alleges Mossbarger has committed waste to the property and allowed its condition to get worse. While the doctrine of caveat emptor may apply to what one has purchased, it does not bar a claim of waste for deterioration subsequent to the purchase caused by a life tenant's acts of waste. Nonetheless, we find the trial court properly granted Mossbarger's motion for summary judgment.

{¶ 12} Summary judgment is proper when the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there is no genuine issue of any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. Civ.R. 56(C);

*Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trial court to resolve. *Id.*

{¶ 13} In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple*, 12th Dist. Clermont No. CA2005-08-075, 2006-Ohio-3536, ¶ 18. In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10. An appellate court reviews a trial court's decision to grant or deny summary judgment de novo, without any deference to the trial court's judgment. *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.).

{¶ 14} R.C. 2105.20 governs actions against a life tenant for waste and provides:

> A tenant for life in real property who commits or suffers waste thereto shall forfeit that part of the property, to which such waste is committed or suffered, to the person having the immediate estate in reversion or remainder and such tenant will be liable in damages to such person for the waste committed or suffered thereto.

By forbidding the life tenant to commit or suffer waste, "R.C. 2105.20 forbids the tenant for life from permanently diminishing the property value by acting contrary to how a reasonable prudent person would act to preserve his own property." *Reel v. Reel*, 11th Dist. Trumbull No. 2014-T-0023, 2014-Ohio-5079, ¶ 14.

{¶ 15} "Waste" has been defined as "an unlawful act or omission of duty on the part of

the tenant which results in a permanent injury to the inheritance." *Underwood v. Lowe*, 6th Dist. Sandusky No. S-84-30, 1985 WL 7505, *2 (June 7, 1985). Waste is categorized as either voluntary or permissive. *Id.* Voluntary waste is willful waste. *Id.* Permissive waste "arises from the neglect, omission, sufferance, or permission of the tenant in failing to preserve or protect the estate." *Reams v. Henney*, 88 Ohio App. 409, 410 (2d Dist.1950).

{¶ 16} Because an action under R.C. 2105.20 "is a special statutory proceeding and forfeitures, generally, are not favored by the law, the evidence must be strictly construed." *Rzeszotarski v. Sanborn*, 11th Dist. Geauga No. 96-G-1906, 1996 WL 649111, *6 (June 7, 1996); *Folden v. Folden*, 90 Ohio Law Abs. 218 (4th Dist.1962). "[N]ot every instance of waste on the part of the life tenant which results in a permanent injury to the inheritance is actionable." *Underwood* at *3. Whether waste has been committed depends on the nature of the property and the particular facts and circumstances in each case. *Id.*, citing *Mohler v. Mohler*, 23 Ohio Law Abs. 138, 1936 WL 2139 (9th Dist.1936).

{¶ 17} We find that Mossbarger met her initial burden of demonstrating there was no genuine issue of material fact as to whether her management of the property constituted acts of waste. Attached to her motion for summary judgment was the affidavit of Jim East, her son. The affidavit states that (1) when Mossbarger's late husband purchased the property, all the buildings "were in a state of disrepair and in fact should have been torn down, except the dwelling house, which needed some repair;" (2) Mossbarger's late husband "simply cash rented the land during the latter years of his life and made no substantial improvements to it;" and (3) "in the last two years, Mossbarger has through her tenant farmer improved the residence property and it is currently rented."

{¶ 18} The affidavit further states that the property's average yields for soybeans was 47 bushels per acre for the year 2012-2013, when grown, corn averages 200 bushels per acre, and the "tenant farmer pays $250 per acre cash rent, which is the average rent in that

part of Madison County, Ohio." The affidavit also expressed East's belief that the tenant farmer initially employed by Mossbarger's late husband and later retained by Mossbarger "did engage in good farming practices, maintained the soils and paid an average amount of cash rent for the acreage over a number of years to [Mossbarger and her late husband]." We find that in light of East's affidavit, Mossbarger discharged her initial burden under Civ.R. 56 with regard to Palmer's claim of waste.

{¶ 19} We further find that the trial court properly granted Mossbarger's motion for summary judgment. Attached to Palmer's memorandum in opposition to Mossbarger's motion for summary judgment were photos of the property taken in August 2012 and a Soil Analysis Report from November 2012.[1] Evidence submitted by the parties also includes Mossbarger's deposition.

{¶ 20} The photos clearly depict the general poor condition of the property, including broken or cut tree limbs on the ground, and the deteriorated condition of buildings on the property. According to Palmer, the November 2012 Soil Analysis Report shows that the property's soil is below average to support farming operations. The report itself is a list of various numbers and percentages regarding three different soil samples. No written explanatory document accompanies the report.

{¶ 21} In her deposition, Mossbarger testified that (1) the residence on the property is

---

1. In his memorandum opposing summary judgment, Palmer states that "in deposition testimony, [his] expert witness Mike Lower [who analyzed the property soil] testified that the results showed the soil had been allowed to fall well below average quality for farming operations. *See* Soil Test Results, attached hereto as Exhibit B." The deposition referenced by Palmer was never transcribed nor filed with the trial court, and therefore does not comply with Civ.R. 56(C). There is no evidence the trial court considered the foregoing statement. Likewise, we will not consider it. *See French v. New Paris*, 12th Dist. Preble No. CA2010-05-008, 2011-Ohio-1309. We further note that the photos and the report submitted by Palmer are not sworn, certified or authenticated by affidavit, and are therefore not proper evidence under Civ.R. 56(C) and (E). *See Diaz v. Henderson*, 12th Dist. Butler No. CA2011-09-182, 2012-Ohio-1898. Nonetheless, because Mossbarger did not object to their admissibility below and because the trial court considered both the photos and the report in granting summary judgment to Mossbarger, we will likewise consider them despite their noncompliance with Civ.R. 56. *French* at ¶ 12; *Ohio City Orthopedics, Inc. v. Med. Billing And Receivables, Inc.*, 8th Dist. Cuyahoga No. 81930, 2003-Ohio-1881, ¶ 5, fn. 1.

currently rented but there is no written lease, (2) she has not been to the house in a few years and has not been on the property in a couple of years, (3) however, the photos taken in August 2012 depict what she recalls the condition of the property to be, (4) the property has been farmed by the same family for a long time, and (5) she received $12,200 in cash rent in 2013 for the property and will receive the same amount in 2014. She also testified that (1) she has an insurance policy on the property and the residence but not on the other buildings on the property, (2) she relies on her son and the tenants to keep her informed of the condition of the property and any needed repairs, (3) whenever she has been told about needed repairs, she took care of it, (4) the last such repair was in 2013 for the well on the property, (5) about seven years ago, there were some problems with the residence's heating system and she had someone make the necessary repairs, and (6) her expenses for the property include real estate taxes, any repairs for the residence, and insurance.

{¶ 22} Upon carefully reviewing the evidence submitted by the parties, which must be strictly construed in an action for waste, we find that the evidence is so one-sided that Mossbarger is entitled to judgment as a matter of law. As stated earlier, waste is defined as "an unlawful act or omission of duty on the part of the tenant which results in a permanent injury to the inheritance." *Underwood*, 1985 WL 7505 at *2. Photos submitted by Palmer clearly show the poor condition of the property and buildings and the fact that the quality of maintenance of the property is not of the highest degree. However, most items of disrepair are the result of fair wear and tear, and other items, such as the tree limbs on the ground, could easily be removed from the property and do not permanently diminish the value of the property. There is nothing in the pleadings or exhibits that would allow a reasonable person to conclude that the property is in any different condition today than it was when managed by Mossbarger's late husband or on the date Palmer purchased his one-third remainder interest. There is simply no evidence that would allow reasonable minds to conclude that the condition

of the property during Mossbarger's life estate has worsened and depreciated.

{¶ 23} Palmer cites a decision of the Fifth Appellate District to support his claim that Mossbarger's failure to protect and preserve the property constitutes waste. *See Durben v. Malek*, 5th Dist. Tuscarawas No. 2013 AP 08 0032, 2014-Ohio-2611. In that case, Roxanne Malek purchased sight unseen a property from Anita and Bill Durben. The purchase agreement provided that the Durbens would have a life estate on a portion of the property and prohibited them from committing waste on the land. When Malek took possession of the property four years later, the house was in a deplorable condition. The Durbens filed a complaint against Malek for replevin and conversion; she asserted a counterclaim for waste of the life estate and sought damages. Following a bench trial, the trial court found in favor of Malek with regard to her waste claim.

{¶ 24} The Fifth Appellate District upheld the trial court's decision as follows:

> While [Malek] admits she does not know the exact condition of the interior of the house in 2007 when she purchased it, from the above stated facts including [the Durbens'] own admissions that they did nothing to try to clean or maintain the property, it is evident that [the Durbens], even accounting for normal wear and tear, did not return the building to [Malek] in the condition it was in when she purchased the property in 2007.

*Durben* at ¶ 61. In support of its decision, the appellate court noted that according to Malek, it was apparent by 2009 that the condition of the house and premises were deteriorating and getting worse and worse, and photos submitted by Malek depicted the deplorable condition of the house. In addition,

> Appellant George Durben readily admitted that the situation had gotten worse after [Malek] purchased the property. George Durben testified that they did nothing to prevent the condition of the property from deteriorating or worsening. He admitted that they failed to repair the plumbing, the furnace, or anything else when it broke. He admitted that they never cleaned the sinks or the bath tubs. He further admitted that outside of a failed attempt trying to clean the front porch, no repairs were made to the property.

*Id.* at ¶ 56.

{¶ 25} We note that in finding that the Durbens had committed waste to the life estate, it was significant to the appellate court that the condition of the property has worsened during the Durbens' life estate and since Malek had acquired her interest in the property. We find that *Durben* is factually different from the case at bar. Unlike the Durbens, Mossbarger did not admit that the property had worsened following Palmer's purchase of his one-third remainder interest, or that she had failed to take care of or make any repairs to the property. To the contrary, Mossbarger testified she has made any necessary repairs and that the property and the residence, but not the other buildings, are covered by insurance.

{¶ 26} Accordingly, Mossbarger is entitled to judgment as a matter of law on the claim that she violated R.C. 2105.20 by committing waste to the property after Palmer acquired his one-third remainder interest. The trial court, therefore, did not err in granting her motion for summary judgment.

{¶ 27} Palmer's assignment of error is overruled.

{¶ 28} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.