[Cite as *Havens v. Union Twp.*, 2019-Ohio-1401.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| VERNON LEE HAVENS II, | : | |
| Appellant, | : | CASE NO. CA2018-10-020 |
| | : | O P I N I O N |
| - vs - | | 4/15/2019 |
| | : | |
| UNION TOWNSHIP, et al., | : | |
| Appellees. | : | |


CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CVH 20170208


Vernon Lee Havens II, 1238 State Route 38 NE, Washington C.H., Ohio, 43160, pro se

Jess C. Weade, Fayette County Prosecuting Attorney, Sean Abbott, Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for appellees


**HENDRICKSON, P.J.**

{¶ 1} Vernon Lee Havens II appeals the decision of the Fayette County Court of Common Pleas, which granted summary judgment in favor of defendants, Union Township and Fayette County, on Havens' complaint for a writ in mandamus compelling the defendants to enforce a local zoning resolution. For the reasons described below, this court finds that genuine issues of fact preclude summary judgment with respect to the mandamus claim, reverses the grant of summary judgment, and remands for further proceedings.

{¶ 2} Havens is a one-fifth owner of real property located at 1238 State Route 38 in Union Township, Fayette County, Ohio ("the property"). Havens' siblings possess the other four-fifths interest in the property. The Havens siblings took title to the property following the passing of their mother in 2013. Also in 2013, Havens moved into a residence on the property and began raising chickens, ducks, and geese.

{¶ 3} James and Beverly Moore own land that abuts the property. James has operated what he describes as an "automobile towing and storage business" on their land since 1990. Initially, James and Beverly allowed Havens' poultry to graze on their land. However, in July 2016, a goose attacked Beverly. The Moores then instructed Havens to remove his poultry from their land.

{¶ 4} Havens began complaining to the local authorities about zoning violations occurring on the Moores' land. Among other concerns, Havens alleged that the Moores were operating an unpermitted "junkyard." However, the local zoning official inspected the Moores' land and determined that it was not in violation of the local zoning resolution.[1] Instead, the zoning official noted that Havens' property was not zoned for agricultural use and Havens' poultry operation violated the zoning resolution.

{¶ 5} Havens filed a pro se lawsuit against the defendants.[2] The complaint alleged that the defendants had failed to enforce their rules and regulations concerning junkyards and that this failure to enforce had resulted in a nuisance and a taking of Havens' property. Havens asked the court for a writ of mandamus to compel the defendants to enforce their zoning regulations against the Moores' land, for inverse condemnation, for monetary damages for the reduction in value of the property, and for injunctive relief "forbidding any

1. When this inspection occurred is not apparent from the summary judgment record.

2. Havens brought the suit individually; his siblings are not parties.

more material qualifying as junk or salvage" on the Moores' land. The defendants answered, raising various affirmative defenses and asserting a counterclaim against Havens for frivolous conduct.

{¶ 6} Havens moved for "leave to motion for summary judgment." This filing contained arguments akin to a summary judgment motion. However, assuming this document could be treated as a motion for summary judgment, Havens failed to submit any admissible summary judgment evidence. The filing referenced a set of unauthenticated photographs, documents, and one unnotarized affidavit. The court denied the motion. Havens also filed – out-of-time and without leave of court – an "amended complaint" purporting to add claims against the defendants for harassment, libel, and slander.

{¶ 7} The defendants later moved for summary judgment. The defendants argued that Havens was not entitled to a writ for various reasons, e.g., that he failed to file a formal administrative appeal and therefore failed to exhaust administrative remedies prior to filing suit, that he lacked standing due to his one-fifth interest in the property, and that the defendants were immune from suit pursuant to the political subdivision tort immunity laws, i.e., R.C. Chapter 2744. The defendants supported their motion with affidavits, including that of the local zoning official and of several township officials who averred that Havens, to the best of their knowledge, had not appealed to the Union Township Board of Trustees with his concerns of zoning violations.

{¶ 8} Havens responded in a combined memorandum in opposition to summary judgment and motion for default judgment. In support of his opposition memorandum, Havens filed two notarized affidavits of individuals who claimed personal knowledge of the conditions on the Moores' land.

{¶ 9} The court later issued an entry overruling Havens' numerous outstanding motions and granting summary judgment to the defendants on Havens' claims. The court

stated that it had reviewed the parties' pleadings *only* and found that there were no genuine issues of fact for trial.[3]  Havens appeals, raising three assignments of error.

{¶ 10}  Assignment of Error No. 1:

{¶ 11}  THE TRIAL COURT ERRED BY GRANTING THE DEFENDANTS SUMMARY JUDGEMENT.

{¶ 12}  Havens presents numerous arguments and sub-issues in support of this assignment of error but principally argues that the court erred in granting summary judgment because of the existence of genuine issues of fact as to whether a junkyard exists on the Moores' land.  An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party.  Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 13}  The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  Once this burden is met, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must supply evidentiary materials setting forth specific facts showing there is a genuine issue of material fact for trial.  *Puhl v. U.S. Bank, N.A.*, 12th Dist. Butler No. CA2014-08-171, 2015-Ohio-2083, ¶ 13.

---

3. The court certified the entry with Civ.R. 54(B) language.  The defendants' frivolous conduct claim was unresolved as of the filing of this appeal.

Summary judgment is proper if the nonmoving party fails to set forth such facts. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Palmer v. Mossbarger*, 12th Dist. Madison No. CA2014-04-011, 2015-Ohio-231, ¶ 13.

{¶ 14} Initially, we note that Havens' complaint alleged a taking and requested inverse condemnation. "Inverse condemnation" is a "'shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'" *City of Cincinnati v. Chavez Props.*, 117 Ohio App.3d 269, 274 (1st.Dist 1996), quoting *United States v. Clarke*, 445 U.S. 253, 257, 100 S. Ct. 1127 (1980). It is predicated upon the concept that a taking of private property has occurred and the government should have but did not initiate formal condemnation proceedings. *Wilson v. Trustees Union Twp.*, 12th Dist. Clermont No. CA98-06-036, 1998 Ohio App. LEXIS 5025, *15-16 (Oct. 26, 1998); s*ee also Chavez* at 274.

{¶ 15} Inverse condemnation actions can be grouped into a few broad categories. First, there are those which involve governmental regulations on the use of property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886 (1992). Such restrictions may constitute a taking if they (1) compel the property owner to suffer a "physical invasion" of his property or, (2) where regulation denies all economically beneficial or productive use of land. *Id.* Second, inverse condemnation has been pursued where government actions, such as public works projects like airports or urban renewal projects, "substantially interfere" with the use of property. *Chavez* at 274, citing *Thompson v. Tualatin Hills Park and Recreation Dist.*, 496 F.Supp. 530, 539, (D.Or.1980).

{¶ 16} Havens does not claim that the defendants enacted any new regulations that caused a physical invasion of the property or that denied him all economically beneficial use of the property. Nor does he allege that the defendants undertook some project that has

substantially interfered with his use of the property. Instead, he claims that the defendants have failed to enforce their rules and regulations. Thus, Havens has not set forth grounds that would support a request for inverse condemnation. Accordingly, this court affirms the lower court to the extent it granted summary judgment to the defendants on Havens' takings claim.

{¶ 17} The gravamen of Havens' complaint is his request for a writ compelling the defendants to enforce the local zoning resolution and state laws applicable to junkyards. To be entitled to a writ of mandamus Havens must shows by plain, clear, and convincing evidence that (1) he has a clear legal right to the relief requested, (2) the defendants are under a clear legal duty to perform the requested act, and (3) Havens has no plain and adequate remedy in the ordinary course of law. *State ex rel. Ney v. Niehaus*, 33 Ohio St.3d 118, 118-119 (1987), citing *State ex rel. Middletown Bd. of Edn. v. Butler Cty. Budget Comm.*, 31 Ohio St. 3d 251, 253 (1987).

{¶ 18} The Moores' land is subject to the Union Township Zoning Resolution ("the resolution") and is zoned commercial and industrial. Per the resolution, "motor vehicle storage and salvage yards" are conditional uses in the industrial district. Article XIX, Section 19.04(C). The resolution defines "storage yard" or "salvage yard" as "an area for the temporary storage of operable motor vehicles for a period of time generally less than one (1) month, such as an impound lot." Article II, Section 2.02.63.

> The resolution also defines "junk yard," it is:
>
> [a]n open area where waste, used, or second hand materials are bought and sold, exchanged, stored, baled, packaged, disassembled or handled including but not limited to scrap iron and other metals, paper, rags, rubber tires, and bottles. A 'junk yard' includes automobile wrecking yards and includes any area of more than two hundred (200) square feet for storage, keeping, or abandonment of junk but does not include uses established entirely within enclosed buildings. *The storage of an inoperable or unlicensed vehicle shall be construed to be a junkyard.*

(Emphasis added).

{¶ 19} The resolution permits junkyards but with certain requirements including (1) the submission of a development plan to the Board of Zoning Appeals, (2) that the site of the junkyard be a minimum of 200 feet from any residence or public area and include a 50 foot section of screening vegetation or trees, and (3) that the junkyard owner submit evidence that he or she is compliant with applicable state laws. Appendix A, Junkyards, Paragraphs 1 through 5.

{¶ 20} The resolution provides that the zoning official shall "[e]nforce the Zoning Resolution and take all necessary steps to remedy conditions found in violation by ordering, in writing, the discontinuance of illegal uses or work in progress, by causing a citation to be issued, and by directing cases of noncompliance to the Board of Zoning Appeals or other appropriate entity for action." Article III, Section 3.01.03(A).

{¶ 21} The resolution also provides that "any person may file a written complaint" "[w]henever a violation of this Resolution occurs, or is alleged to have occurred * * *." Article IV, Section 4.10.02. "Such complaint shall state fully the causes and basis thereof, and shall be filed with the Zoning Official. The Zoning Official shall record properly such complaint, immediately investigate, and take such appropriate action thereon as may be necessary and provided for by this Resolution." *Id.*

{¶ 22} The state laws applicable to junkyard licensing are set forth in R.C. 4737.05 through 4734.14. Junkyards outside of municipalities must be licensed by the county auditor. R.C. 4737.07. There are fencing requirements and procedures set forth for inspections before licensure. R.C. 4737.09 and 4737.10. The county prosecutor is empowered to sue for injunction or other relief if the prosecutor finds that a junkyard is being operated in violation of the Revised Code. R.C. 4737.11.

{¶ 23} With respect to whether the conditions on the Moores' land could constitute a junkyard, James Moore averred in his summary judgment affidavit that he does not operate a junkyard, but rather an "automobile towing and storage business." The zoning official, Harold Skaggs, averred: "[i]n my opinion, the automobile towing and storage business operated by James and Beverly Moore is not in violation of the Union Township Zoning resolution." Neither affidavit addresses whether inoperable vehicles have been stored on the Moores' land.

{¶ 24} However, Havens filed the affidavit of Victoria Lynn Havens. She averred: "I have annually viewed the [Moores'] property since they acquired it and have observed it to be a continuously and steadily growing and expanded repository of junk and salvage vehicles. * * * Further, I assert that there are inoperable vehicles upon that property which have been in the same place and position longer than I can remember, but certainly longer than since 2010." Havens also filed the affidavit of his neighbor Bryce Miller. Miller averred "I have viewed countless wrecked vehicles including cars, vans, panel trucks, and school buses with open doors, windows, broken windows, open floors, …, upon the Moore property, and I have seen dead carcasses and skeletons of animals which appeared to be older prey taken into those vehicles with the flesh eaten off of them."

{¶ 25} Havens' summary judgment affidavits, which this court construes in his favor, are sufficient to create a genuine issue of fact with respect to whether the Moores' land contains a junkyard in violation of the zoning resolution and potentially violates state laws related to the licensing of junkyards. The resolution provides that any person may file a complaint concerning a violation of the resolution and it is the zoning official's express duty to investigate and enforce the resolution and take necessary steps to ensure compliance. Similarly, the county has statutory responsibilities to ensure compliance with state laws concerning junkyards. Accordingly, this court concludes that genuine issues of fact remain

with regard to whether a junkyard exists on the Moores' land and whether Havens may be entitled to a writ to compel compliance with the local zoning and state laws.

{¶ 26} The defendants argue that Havens is not entitled to a writ because they are immune from suit under R.C. Chapter 2744. However, R.C. Chapter 2744 bars tort claims for money damages against political subdivisions and has no application in actions in equity or for extraordinary writs. *See Barrow v. Village of New Miami*, 12th Dist. Butler No. CA2017-03-031, 2018-Ohio-217, ¶ 16; *City of Cincinnati v. City of Harrison*, 1st Dist. No. C-130195, 2014-Ohio-2844, ¶ 31. Thus, political subdivision immunity would not preclude Havens' right to a writ.

{¶ 27} The defendants further argue that Havens lacks standing to pursue a writ because he is only a one-fifth owner of the property. The defendants cite no legal authority for this position. This court finds that Havens has a sufficient personal stake in the outcome of this case to establish standing. He resides in a home next to the land of which he complains and possesses an ownership interest in the property. His status as a fractional owner does not diminish the alleged injury in this case.

{¶ 28} Finally, the defendants argued that Havens was not entitled to a writ for his failure to exhaust administrative remedies. The zoning resolution provides for review of the zoning official's actions by the Board of Zoning Appeals. Article III, Section 3.05 provides:

> It is the intent of this Resolution that all questions of interpretation and enforcement shall first be presented to the Zoning Official. Such questions shall be presented to the Board of Zoning Appeals only on appeal from the decision of the Zoning Official, and recourse from the decisions of the Board of Zoning Appeals shall be only to the courts as provided by law. The Board of Township Trustees shall not have the authority to override the decisions of the Board of Zoning Appeals and/or the Zoning Official on matters of appeal or variance. Nothing in this Resolution shall be interpreted to prevent any person from appealing a decision of the Board of Zoning Appeals to the courts pursuant to Chapters 2505 and 2506 of the Ohio Revised

Code.  Such appeal shall be made within thirty (30) days of the Board's written decision.

**{¶ 29}** It is possible that Havens failed to exhaust his administrative remedies prior to filing this suit and therefore has a plain and adequate remedy at law that would preclude the issuance of a writ.  However, there is a dearth of information in the summary judgment record on this subject and it would be speculative for this court to conclude whether Haven had exhausted administrative remedies prior to filing this lawsuit.  The only relevant and admissible summary judgment evidence consists of the affidavits of three elected township trustees, one township fiscal officer, and the zoning official, who all simply averred that Havens, "to the best of their knowledge," had not filed a formal appeal with the Union Township Board of Trustees concerning potential zoning violations at the Moore's property.  However, the resolution provides for an appeal to the Board of Zoning Appeals, not the Board of Trustees.  In fact, the resolution provides that the Board of Trustees has no veto power over the Board of Zoning Appeals.  Thus, an appeal to the Union Township Board of Trustees would be inconsistent with the zoning resolution.

**{¶ 30}** Moreover, there is no admissible summary judgment evidence detailing any communications between Havens and the zoning official, Skaggs.[4]  There is no document or other evidence of any official decision by Skaggs, although the resolution requires any complaint to be filed by the zoning official.   Skaggs averred that he inspected the Moores' land and determined there were no violations, but he does not state when this inspection occurred, whether he inspected the property pursuant to Havens' request, whether he informed Havens of his findings in any manner, or whether he only inspected the property after the lawsuit was filed.  Accordingly, this court does not have a record upon which to

---

4. There is an unauthenticated, undated document attached to one of Havens' filings which appears to be a one-way correspondence from Havens to Skaggs.

make any reliable determination with respect to exhaustion of remedies.

{¶ 31} Havens' remaining issues within this assignment of error are overruled as moot based upon this court's decision that genuine issues of fact remain on Havens' request for a writ of mandamus. This court sustains Havens' first assignment of error.

{¶ 32} Assignment of Error No. 2:

{¶ 33} THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF DEFAULT JUDGEMENT.

{¶ 34} Havens argues that the court erred in denying his motion for default judgment because "egregious perjury, fraud on the court, and unclean hands are grounds to grant default judgment." Perjury, fraud, and the doctrine of unclean hands are not grounds to grant default judgment under Civ.R. 55. A court may grant a default judgment where the party against whom a default judgment is sought has failed to plead or otherwise defend a lawsuit. Civ.R. 55(A). The defendants have pled and defended against Havens' suit. Accordingly, this argument has no merit and this court overrules Havens' second assignment of error.

{¶ 35} Assignment of Error No. 3:

{¶ 36} THE TRIAL COURT ERRED IN DENYING PLAINTIFF SUMMARY JUDGEMENT.

{¶ 37} Havens argues that the court erred in denying him summary judgment. However, Havens did not move for summary judgment. Accordingly, this argument has no merit and this court overrules Havens' third assignment of error.

{¶ 38} Judgment reversed on Havens' claim for a writ of mandamus and remanded for further proceedings but otherwise the decision granting summary judgment is affirmed in all respects.

S. POWELL and M. POWELL, JJ., concur.