[Cite as *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.,* **132 Ohio St.3d 47, 2012-Ohio-1861.**]

THE STATE EX REL. TEAMSTERS LOCAL UNION NO. 436 ET AL., APPELLEES, *v.* BOARD OF COUNTY COMMISSIONERS, CUYAHOGA COUNTY, OHIO, APPELLANT.

[Cite as *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.,* **132 Ohio St.3d 47, 2012-Ohio-1861.**]

*Appeals from decisions of political subdivisions—R.C. Chapter 2506—Exclusion of one department from public employer's early-retirement plan—Taxpayer's action—Standing—Declaratory judgment—Exhaustion of administrative remedies.*

(No. 2011-0569—Submitted December 6, 2011—Decided May 1, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 94703, 194 Ohio App.3d 258, 2011-Ohio-820.

_____

**MCGEE BROWN, J.**

{¶ 1} Appellant, the Board of County Commissioners of Cuyahoga County, appeals from a declaratory judgment in favor of appellees, Teamsters Local Union No. 436 and union member Kevin Lesh (collectively, "the union"), holding that the commissioners' Employee Retirement Incentive Plan ("ERIP") was in violation of R.C. 145.297.[1]

_____

1. R.C. 145.297(B) provides:

> An employing unit may establish a retirement incentive plan for its eligible employees. In the case of a county or county agency, decisions on whether to establish a retirement incentive plan for any employees other than employees of a board of alcohol, drug addiction, and mental health services or county board of developmental disabilities and on the terms of the plan shall be made by the board of county commissioners.

R.C. 145.297(A) provides:

> As used in this section, "employing unit" means:

**{¶ 2}** For the reasons set forth, we reverse the judgment of the court of appeals.

**Background**

**{¶ 3}** On November 6, 2008, the commissioners passed a resolution establishing an early-retirement incentive program, enrollment for which would be open from January 15, 2009, to January 14, 2010. The resolution made the plan available to all employees of the commissioners, except for the Sanitary Engineering Division.

**{¶ 4}** The union represents a bargaining unit of employees who work for the Sanitary Engineering Division of the commissioners. Pursuant to R.C. 6117.01(C), the commissioners supervise the Sanitary Engineering Division, set the compensation of its employees, and approve collective-bargaining agreements with the union. A few days before passage of the resolution, some employees of the Sanitary Engineering Division, none of whom were union members and none of whom are parties to this appeal, had filed a grievance on behalf of all Sanitary Engineering Division employees regarding eligibility for the retirement plan. The county administrator, James McCafferty, held a hearing on the grievance on January 9, 2009. Approximately 15 Sanitary Engineering Division employees, at least four of whom were union members, attended the hearing and were given an

(1) A municipal corporation, agency of a municipal corporation designated by the legislative authority, park district, conservancy district, sanitary district, health district, township, department of a township designated by the board of township trustees, metropolitan housing authority, public library, county law library, union cemetery, joint hospital, or other political subdivision or unit of local government.

    * * *

(3)(a) With respect to employees of a board of alcohol, drug addiction, and mental health services, that board.

(b) With respect to employees of a county board of developmental disabilities, that board.

(c) With respect to other county employees, the county or any county agency designated by the board of county commissioners.

(4) In the case of an employee whose employing unit is in question, the employing unit is the unit through whose payroll the employee is paid.

opportunity to be heard. On January 20, 2009, the administrator issued a decision, determining that the Sanitary Engineering Division employees were not permitted to participate in the retirement plan. The administrator mailed the decision to each employee who had attended the hearing, including the four identified union members, Kevin Lesh, Jerry Tharp, Richard Dryer, and Thomas Spracale. None of the employees attempted to appeal the administrator's decision.

{¶ 5} Almost one year later, on December 22, 2009, the union sent a taxpayer demand letter to the Cuyahoga County prosecutor. The union urged the prosecutor to file an action to compel the commissioners to extend the retirement plan to the Sanitary Engineering Division employees, or to recover the funds used for the retirement plan due to its allegedly unlawful exclusion of the Sanitary Engineering Division. The prosecutor declined to initiate the requested action.

{¶ 6} On December 30, 2009, the union filed a taxpayer action against the commissioners, on behalf of all union-member Sanitary Engineering Division employees, seeking injunctive and declaratory relief. Specifically, the union sought a declaration that the commissioners violated R.C. 145.297 when they authorized the ERIP for all board employees excluding the Sanitary Engineering Division and sought an order compelling the commissioners to include the Sanitary Engineering Division in the ERIP. The union sought similar relief in a separate cause of action for declaratory judgment and in a request for a writ of mandamus in its January 7, 2010 amended complaint. In addition to denying the merits of the union's claims, the commissioners asserted that the union did not have standing to bring its taxpayer action and that it was otherwise barred from requesting equitable remedies because the Sanitary Engineering Division employees had failed to exhaust their administrative remedies.

{¶ 7} Noting that the union had brought the present action mere days before the ERIP was due to terminate, the trial court denied the union's request

for injunctive relief and its action in mandamus, in an entry issued on January 22, 2010. However, the trial court did grant the union's prayer for declaratory relief and held that the commissioners' failure to include the Sanitary Engineering Division as part of the "employing unit" that was eligible for the ERIP did not comply with the definition of "employing unit" in R.C. 145.297 and that the commissioners were therefore in violation of the statute.

{¶ 8} The commissioners appealed to the Eighth District Court of Appeals, which, in a split decision, affirmed the trial court's judgment. *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.*, 194 Ohio App.3d 258, 2011-Ohio-820, 955 N.E.2d 1020 (Cooney, J., dissenting). We accepted discretionary jurisdiction to hear the commissioners' appeal. 128 Ohio St.3d 1556, 2011-Ohio-2905, 949 N.E.2d 43.

## Analysis

{¶ 9} The commissioners raise three propositions of law: first, that the commissioners had the budgetary discretion to exclude one or more of its subordinate divisions from participating in the ERIP; second, that the union-represented Sanitary Engineering Division employees did not have standing to initiate a taxpayer suit, because they did not seek to vindicate a public right; and third, that the Sanitary Engineering Division employees were required to exhaust the available administrative remedies prior to filing the action. Because our resolution of the issues of taxpayer standing and exhaustion of administrative remedies is dispositive, we will address them first.

### Taxpayer Standing

{¶ 10} Before a court may consider the merits of a party's legal claim, the party seeking relief must establish that he or she has standing to bring the claim. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469, 715 N.E.2d 1062 (1999). The issue of standing determines "whether a litigant is

4

entitled to have a court determine the merits of the issues presented." *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). Whether a party has established standing to bring an action before the court is a question of law, which we review de novo. *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

{¶ 11} An analysis of standing in a statutory taxpayer action against a county entity must begin with R.C. 309.12, which allows a county prosecutor to initiate legal action to restrain the contemplated misapplication of county funds or completion of illegal contracts or to recover funds or damages from illegal contracts that have been executed or funds that have been misapplied. If a taxpayer presents a written request to the county prosecutor to take action pursuant to R.C. 309.12 and is denied assistance from the county prosecutor, the taxpayer may initiate his own action on behalf of the county. R.C. 309.13. In addition to the satisfaction of the foregoing formal requirement, the taxpayer must also demonstrate that the remedy sought will benefit the public in order to have standing. *State ex rel. White v. Cleveland*, 34 Ohio St.2d 37, 295 N.E.2d 665 (1973).

{¶ 12} " ' "There are serious objections against allowing mere interlopers to meddle with the affairs of the state, and it is not usually allowed *unless under circumstances when the public injury by its refusal will be serious*." ' (Emphasis added.)" State *ex rel. Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d at 472, 715 N.E.2d 1062, quoting *State ex rel. Trauger v. Nash*, 66 Ohio St. 612, 616, 64 N.E. 558 (1902), quoting *People ex rel. Ayres v. Bd. of State Auds.*, 42 Mich. 422, 429, 4 N.W. 274 (1888). Accordingly, only "when the issues sought to be litigated are of great importance and interest to the public [may they] be resolved in a form of action that involves no rights or obligations peculiar to named parties." *Sheward* at 471. Conversely, when a remedy being pursued is one that is merely for the individual taxpayer's benefit, the taxpayer cannot claim

that he is vindicating a public right, and he will not have standing to pursue a taxpayer action. *State ex rel. Caspar v. Dayton*, 53 Ohio St.3d 16, 20, 558 N.E.2d 49 (1990).

{¶ 13} In *Caspar*, police officers alleged that the city of Dayton was in violation of R.C. 9.44 by not recognizing the officers' prior public service when computing the amount of each officer's supplemental vacation leave. *Id*. at 16. The police officers sought a writ of mandamus to compel the city to correct its computation process and provide additional leave benefits. This court held that the goal of compelling fringe benefits for the police officers' own benefit did not constitute the goal of enforcing a public right and that the police officers' right to vacation pay did not constitute a public right for purposes of a statutory taxpayer action. *Id*. at 20.

{¶ 14} Since *Caspar*, our state's appellate courts have generally concluded that taxpayers were not attempting to benefit the public in similar circumstances. *E.g., Cleveland ex rel. O'Malley v. White*, 148 Ohio App.3d 564, 2002-Ohio-3633, 774 N.E.2d 337, ¶ 42-47 (8th Dist.) (holding that electricians' union lacked taxpayer standing to enjoin the city from using nonelectricians to perform certain work, because public safety was not a true concern and the union was merely protecting its members' interests in keeping the work for themselves); *Assn. of Cleveland Fire Fighters, Local 93 v. Cleveland*, 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, ¶ 16 (8th Dist.) (holding that firefighters' union lacked taxpayer standing to compel back pay and wage differentiation between different ranks of officers because the allegation of a public benefit was a pretext for seeking a private benefit); *Cincinnati ex rel. Radford v. Cincinnati*, 1st Dist. No. C-030749, 2004-Ohio-3501, 2004 WL 1486072, ¶ 12-13 (holding that retirement-system trustees lacked taxpayer standing because their goal was not to enforce a public right but was merely to benefit the retirement system and its members); *Home Builders Assn. of Dayton & Miami Valley v. Lebanon*, 167 Ohio

App.3d 247, 2006-Ohio-595, 854 N.E.2d 1097, ¶ 54 (12th Dist.) (holding that homebuilders lacked standing in a taxpayer action seeking a declaration of unconstitutionality of a city ordinance requiring telecommunications connection fees, because the action was primarily to enforce the homebuilders' private interests, not a public right).

**{¶ 15}** This court distinguished *Caspar* in a subsequent decision, *State ex rel. Fisher v. Cleveland*, 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500. The relators in *Fisher* sought to enjoin the city from requiring municipal employees to submit copies of their tax returns in order to prove that they satisfied the city's residency requirement. Although the relators' taxpayer action in *Fisher* was similar to *Caspar* in that the controversy arose from a public-employment relationship, we reached a different conclusion and held that the relators did have standing to pursue the action. *Id*. at paragraph one of the syllabus. Specifically, the city's actions constituted an unnecessary violation of privacy and therefore an abuse of its corporate powers, which is an appropriate target for a statutory municipal taxpayer action. *Id*. at paragraph three of the syllabus. This court made it clear that we were not suggesting that citizens always have taxpayer standing to challenge the terms of public employment when we expressly distinguished *Caspar*. *Id*. at ¶ 12-18. Moreover, our decision in *Fisher* was supported by factors that are not present in the case at hand.

**{¶ 16}** Unlike the relators in *Fisher*, the union here has failed to allege any concrete taxpayer interest that is threatened by the county's ERIP resolution. Instead, the union merely alleges that the existence of a statutorily noncompliant county resolution constitutes an injury in and of itself. Although it is well established that taxpayers "may judicially contest the validity of any official act which directly affects prejudicially their rights as taxpayers by increasing the burden of taxes or otherwise," taxpayers cannot contest official acts "merely upon the ground that they are unauthorized and invalid." *Pierce v. Hagans*, 79 Ohio St.

9, 22, 86 N.E. 519 (1908).  Thus, without more than the bare claim that the county has failed to comply with R.C. 145.297, the union cannot establish taxpayer standing.

{¶ 17} Although a county's failure to comply with a statute would certainly not benefit the public, allowing constant judicial intervention into government affairs for matters that do not involve a clear public right would also not benefit the public.  As in *Caspar*, there is no vindication of public rights or conferral of public benefits to be found in the union's attempt to obtain retirement benefits for a small number of employees.  Therefore, we hold that the union lacked taxpayer standing to challenge the board's ERIP resolution, and the courts below erred in failing to dismiss the union's taxpayer action for that reason.

### Exhaustion of Administrative Remedies

{¶ 18} Because we hold that the union did not have standing to pursue its taxpayer action, the issue of exhaustion of administrative remedies is moot as to the taxpayer action.  However, to the extent that the union's complaint sought relief that was separate from the taxpayer cause of action, we examine whether the union and the Sanitary Engineering Division employees were required to exhaust administrative remedies prior to initiating a declaratory-judgment action.

{¶ 19} It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).  Thus, a "party must exhaust the available avenues of administrative relief through administrative appeal" before seeking separate judicial intervention.  *Noernberg v. Brook Park*, 63 Ohio St.2d 26, 29, 406 N.E.2d 1095 (1980).  "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its

experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Where a party fails to exhaust available administrative remedies, allowing declaratory relief would serve "only to circumvent an adverse decision of an administrative agency and to bypass the legislative scheme." *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 152, 586 N.E.2d 80 (1992).

{¶ 20} We first look to what administrative remedies were available to the union-represented Sanitary Engineering Division employees. When a board of county commissioners adopts regulations that allow parties to request review from an administrative authority, the decision of that authority constitutes a final order that is appealable, under R.C. 2506.01, to an applicable court of common pleas. R.C. 307.56. Pursuant to R.C. 145.297(B), "[e]very retirement incentive plan shall include provisions for the timely and impartial resolution of grievances and disputes arising under the plan."

{¶ 21} The ERIP in question complied with the above statutory requirements by providing: "Any employee determined to be ineligible to participate in this early retirement incentive plan may file a grievance * * *. Such grievances shall be heard and decided by the Cuyahoga County Administrator * * *. The decision of the Cuyahoga County Administrator shall be final." Although the ERIP was made available only to employees in an "Employing Unit" defined to exclude the Sanitary Engineering Division, the ERIP did not define "Employee" to exclude any division's employees, and thus the grievance process was made available to all employees under the board's supervision. Accordingly, the Sanitary Engineering Division employees were required to file a grievance with the administrator and to file an R.C. 2506.01 administrative appeal from the administrator's decision, in order to exhaust their administrative remedies.

{¶ 22} Although none of the union-represented employees was named in the grievance that was filed on behalf of all of the Sanitary Engineering Division employees, some of the union-represented employees availed themselves of the grievance process by participating in the hearing with the administrator. After the administrator issued a final order denying the grievance, none of the Sanitary Engineering Division employees filed an administrative appeal. Accordingly, the employees failed to exhaust all of their administrative remedies.

{¶ 23} It is well settled that "[a] person entitled under R.C. Chapter 2506 to appeal [an administrative order] is not entitled to a declaratory judgment where failure to exhaust administrative remedies is asserted and maintained." *Schomaeker v. First Natl. Bank of Ottawa*, 66 Ohio St.2d 304, 421 N.E.2d 530 (1981), paragraph three of the syllabus. Under this general rule, the union was not entitled to pursue its action for declaratory judgment, because it filed the action almost one year after the final order of the administrator without first attempting a timely R.C. 2506.01 appeal from the order. However, in line with the Eighth District's holding below, the union asserts that an exception to the general rule applies and that the Sanitary Engineering Division employees were not required to exhaust their administrative remedies, because continuing to participate in the grievance process would have been futile.

{¶ 24} It is true that parties need not pursue their administrative remedies if doing so would be futile or a vain act. *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 275, 328 N.E.2d 395 (1975). However,

a "vain act" occurs when an administrative body lacks the authority to grant the relief sought; a vain act does not entail the petitioner's probability of receiving the remedy. The focus is on the *power* of the administrative body to afford the requested relief, and not on the happenstance of the relief being granted.

(Emphasis sic.) *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 115, 564 N.E.2d 477 (1990). Neither the decision below nor the appellees explain why it would have been impossible to obtain relief through an administrative appeal, apart from merely stating that the Sanitary Engineering Division employees were excluded from participating in the ERIP. As noted above, the board's ERIP made the grievance process available to the employees, and union-represented employees were given an opportunity to be heard during the grievance hearing. Nothing would have prevented the union from attacking the validity of the ERIP in an administrative appeal. Therefore, we hold that the Sanitary Engineering Division employees' continued participation in the grievance process would not have been a vain act, and we reverse the Eighth District's decision allowing the union to pursue the declaratory-judgment action without exhausting the available administrative remedies.

### Conclusion

{¶ 25} We hold that the union lacked standing to bring a taxpayer action against the commissioners and that to the extent that the union had standing in its own right, the union failed to exhaust its administrative remedies. Therefore, the issue of whether the commissioners' ERIP was in violation of R.C. 145.297 is moot. Accordingly, we reverse the decision of the Eighth District Court of Appeals.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Mangano Law Offices Co., L.P.A., Basil W. Mangano, and Joseph J. Guarino III, for appellee.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Dale Pelsozy, Assistant Prosecuting Attorney, for appellant.

_____