[Cite as *Harson Investments, Ltd. v. Troy*, 2018-Ohio-2748.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE EX REL. HARSON INVESTMENTS, LTD., et al. | : | |
| | : | |
| | : | Appellate Case No. 2017-CA-22 |
| Plaintiffs-Appellants | : | |
| | : | Trial Court Case No. 2016-CV-546 |
| v. | : | |
| | : | (Civil Appeal from |
| CITY OF TROY, OHIO, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of July, 2018.

. . . . . . . . . .

MICHAEL P. MCNAMEE, Atty. Reg. No. 0043861, GREGORY B. O'CONNOR, Atty. Reg. No. 0077901, 2625 Commons Boulevard, Beavercreek, Ohio 45431
  Attorneys for Plaintiffs-Appellants

GRANT D. KERBER, Atty. Reg. No. 0068474, 215 West Water Street, Troy, Ohio 45373
  Attorney for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} In this action, Plaintiffs-Appellants, Harson Investments, Ltd., and AMK Co., LLC (collectively "Harson"), appeal from trial court judgments dismissing Harson's petition for a writ of mandamus and complaint for declaratory judgment. The Defendants-Appellees are the City of Troy; the Troy City Council; and Shannon Brandon, the Troy Zoning Inspector, (collectively, "Troy").

{¶ 2} Harson contends that the trial court erred in finding that Harson failed to exhaust administrative remedies, and, therefore, failed to state a claim for mandamus relief. According to Harson, exhaustion was not required because the City of Troy Board of Zoning Appeals ("BZA") lacked jurisdiction to grant or deny a signage application.

{¶ 3} Harson also contends that the trial court incorrectly granted judgment on the pleadings with respect to Harson's complaint for declaratory judgment. In this regard, Harson maintains that the trial court's decision renders Section 749.11(o) of the Codified Ordinances of the City of Troy ("T.C.O.") a nullity. Alternatively, Harson argues that Section 749.11(o) is ambiguous.

{¶ 4} We conclude that the trial court did not err in dismissing Harson's petition for a writ of mandamus, as Harson failed to exhaust administrative remedies following the denial of its application for a sign permit. In addition, the trial court did not err in granting Troy's motion for judgment on the pleadings with respect to Harson's request for a declaratory judgment. The ordinance outlining permissible limits for signage was not ambiguous and restricted total signage to the amounts listed in T.C.O. 749.11(o)(1), regardless of the number of tenants who occupied a commercial property. Accordingly, the judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 5} Harson is the owner of commercial real estate located at 1800-1808 West Main Street in Troy, Ohio.   The property is zoned B-2, General Business District, and consists of a single-story retail strip center with four units: 1800, 1802, 1806, and 1808 West Main Street.   The building has a 50 foot setback and has 100 feet of frontage.

{¶ 6} Prior to 2015, all four units had signage that had been approved by the Zoning Administrator.   However, unit 1802 has been vacant since March 2015; the remaining units continued to be occupied and had a total of 106.38 square feet of signage for the three units.

{¶ 7} On December 8, 2016, Harson submitted an application to the Troy Zoning Administrator, seeking a sign permit for unit 1802.   The application requested a sign that was 12.5 feet long and 3 feet high, for a total of 37.5 square feet.   On December 13, 2016, Shannon Brandon, the Troy Zoning Inspector, sent a letter to Harson denying the application for the sign pursuant to T.C.O. 749.11(o)(1) and (2), which are part of the T.C.O. Business Regulation Code.   Brandon's letter stated that:

Section 749.11(o)(1) and (2) refers to the table outlining the maximum square footage allowed for signs.   Based on the building setback and the amount of building frontage, the building is allowed a maximum of 100 square feet of signage.   The existing tenants have a combined total of signage of 106.38 square feet currently on the building.   Therefore, your request of a new sign in the amount of 37.5 square feet is not permitted.

749.19 APPEALS AND VARIANCES

(b)   The BZA shall not have the authority to approve any sign with a message area exceeding that permitted by this chapter, or to permit the total message area to exceed the allowable message area permitted by this chapter.   Only changes to the placement or location of a sign shall be granted by the BZA.

Petition for Writ of Mandamus and Complaint for Declaratory Judgment, Doc. #1, Ex. B, p. 1.

{¶ 8} Harson did not pursue an administrative appeal of the Zoning Inspector's decision.   Instead, on December 19, 2016, Harson filed a petition for writ of mandamus and complaint for declaratory judgment against Troy in the Miami County Common Pleas Court.   The complaint asserted the above facts, and contained three grounds for relief: one claim for a declaratory judgment and two claims for mandamus relief.   The complaint also included these exhibits: (1) the application submitted to the Zoning Inspector (Ex. A); (2) Brandon's letter (Ex. B); and (3) the affidavit of Alex Kolodesh (Ex. C).   Kolodesh was the Vice President of Dayton Co., which was the sole General Partner of Harson Investments, Ltd.   At the time of the application, Harson Investments, Ltd. owned the property at 1800-1808 West Main Street.

{¶ 9} On January 12, 2017, Troy filed an answer to the petition and complaint, and asserted various affirmative defenses, including failure to exhaust administrative remedies.   Subsequently, on March 9, 2017, Troy filed a notice with the trial court that it had issued a sign permit to Harson on March 3, 2017.   Troy attached the permit, which approved a sign of up to 25 square feet.   On March 9, 2017, Troy also filed a motion to dismiss Harson's mandamus claims, contending that they failed to state a claim under

Civ.R. 12(B)(6). After additional memoranda were filed, the trial court granted the motion to dismiss on June 9, 2017, based on Harson's failure to exhaust administrative remedies. Thus, the request for declaratory judgment was the only claim that remained.

{¶ 10} On July 5, 2017, Troy filed a motion for judgment on the pleadings with respect to the claim for declaratory judgment. In moving for judgment on the pleadings, Troy did not assert that Harson had failed to exhaust administrative remedies. After Harson responded to the motion and filed its own motion for judgment on the pleadings, the trial court filed a decision on August 31, 2017, concluding that T.C.O. 749.11(o) was unambiguous and capped permissible signage at 100 feet for both single occupancy buildings and buildings containing multiple units. Harson timely appealed from both judgments.

## II.   Was Harson Required to Exhaust Administrative Remedies?

{¶ 11} Harson's First Assignment of Error states that:

The Trial Court Erred in Granting Troy's Motion to Dismiss.

{¶ 12} Under this assignment of error, Harson presents two issues for review. The first issue concerns whether Troy's code gives the BZA jurisdiction to hear appeals from a zoning administrator's decision that a particular sign would exceed the permissible message area that the code of ordinances establishes. According to Harson, T.C.O. 749.19(b) deprives the BZA of jurisdiction.

{¶ 13} As was noted, the trial court dismissed the second and third claims for relief because Harson failed to exhaust administrative remedies. The court, therefore, concluded that the requests for a writ of mandamus failed to state a claim under Civ.R.

12(B)(6). The first mandamus claim involved Harson's assertion that it had a clear legal right to have its signage approved, and that it lacked an adequate remedy at law. In the second mandamus claim, Harson alleged that it had a constitutionally protected interest in economically viable use of its property, and that the application of T.C.O. 749.11(o) resulted in an unconstitutional taking of the property.

{¶ 14} Dismissal of claims under Civ.R. 12(B)(6) is appropriate where " 'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *Carter v. Trotwood-Madison City Bd. of Edn.*, 181 Ohio App.3d 764, 2009-Ohio-1769, 910 N.E.2d 1088, ¶ 27 (2d Dist.), quoting *Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 936, 746 N.E.2d 222 (10th Dist.2000). *See also State ex rel. Hilltop Resources v. Cincinnati*, 166 Ohio App.3d 171, 2005-Ohio-6817, 849 N.E.2d 1064, ¶ 10 (1st Dist.) (applying Civ.R. 12(B)(6) standards to dismissal of a relator's verified petition for a writ of mandamus). We review judgments dismissing claims under Civ.R. 12(B)(6) on a de novo basis, which means " 'that we apply the same standards as the trial court.' " *Carter* at ¶ 26, quoting *GNFH, Inc. v. W. Am. Ins. Co.*,172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).

{¶ 15} Typically, parties must exhaust administrative remedies before seeking mandamus relief. *State ex rel. Lieux v. Village of Westlake*, 154 Ohio St. 412, 96 N.E.2d 414 (1951), paragraph two of the syllabus. *See also State ex rel. Dynamic Industries, Inc. v. Cincinnati*, 147 Ohio St.3d 422, 2016-Ohio-7663, 66 N.E.3d 734, ¶ 12 (failure to exhaust administrative remedies precluded mandamus action because lack of final decision on application for permit indicated city had no clear legal duty to grant requested relief, and applicant did not have clear legal right to relief).

{¶ 16} " 'Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.' " *State ex rel. Teamsters Local Union 436 v. Cuyahoga Cty. Bd. of Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 19, quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

{¶ 17} Exceptions to exhaustion have been found in two situations: (1) where no administrative remedy is available that can provide the requested relief or resorting to the remedy would be "wholly futile"; and (2) "when the available remedy is onerous or unusually expensive." (Citations omitted.) *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 17, 526 N.E.2d 1350 (1988).

{¶ 18} In arguing that the BZA lacked jurisdiction to review the decision of the Zoning Inspector, Harson appears to be relying on the first exception to exhaustion. Harson's argument is based on the wording of T.C.O. 749.19(b), which was quoted in Brandon's letter. This section states that:

> The BZA shall not have the authority to approve any sign with a message area exceeding that permitted by this chapter, or to permit the total message area to exceed the allowable message area permitted by this chapter. Only changes to the placement or location of a sign shall be granted by the BZA.

{¶ 19} Basically, Harson argues that the BZA was forbidden to allow signs that exceeded the amount of square footage permitted by T.C.O. 749.11(o), and, therefore,

lacked jurisdiction to hear Harson's appeal. The trial court disagreed, and held that T.C.O. 749.19 provided a remedy that could have been pursued.

**{¶ 20}** In particular, the trial court noted that Harson's assertions in the complaint were inconsistent with its position on the BZA's lack of authority. Specifically, Harson did not contend at any point that it should be permitted to have signs that exceed what is permitted by T.C.O. 749.11(o). Instead, Harson's argument was that the Zoning Inspector incorrectly interpreted the meaning of this code section and that Harson's sign was within the permissible limits. This is an argument that we will address later during our discussion of the motion for judgment on the pleadings. However, we agree with the trial court that the dispute over the meaning of T.C.O. 749.11(o) was appropriate for appeal to the BZA.

**{¶ 21}** T.C.O. 749.19 provides, in pertinent part, as follows:

The Board of Zoning Appeals shall have authority to hear appeals and consider variance applications as provided under Chapter 1137 of the Zoning Code. The affirmative vote of four (4) members shall be required to sustain an appeal. The affirmative vote of four (4) members shall be required to approve a variance.

* * *

(b) The BZA shall not have the authority to approve any sign with a message area exceeding that permitted by this chapter, or to permit the total message area to exceed the allowable message area permitted by this chapter. Only changes to the placement or location of a sign shall be granted by the BZA.

{¶ 22} Chapter 1137 of the Zoning Code outlines the jurisdiction of the BZA and procedures for appeals from decisions of the Zoning Administrator. T.C.O. 1137.02 gives the BZA jurisdiction and authority, in relevant part, as follows:

(a) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination (all hereinafter referred to collectively as "decision") made under this Zoning Code by the Zoning Administrator, subject to the procedure and standards set out in this Zoning Code.

* * *

(f) To hear and decide all matters related to appeals and variances from Section 749.19 of the Codified Ordinances related to signs.

{¶ 23} Thus, T.C.O. 1137.02 specifically gives the BZA jurisdiction to hear appeals related to signs, which would include errors in decisions on signs. Disagreements over interpretation of an ordinance as it applies to a party's application for a sign permit fall within the category of an alleged error in a decision.

{¶ 24} As support for its position, Harson also relies on *Hilltop Resources*,166 Ohio App.3d 171, 2005-Ohio-6817, 849 N.E.2d 1064, and our decision in *Englewood v. Turner*, 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431 (2d Dist.). Both these decisions concluded that exhaustion of administrative remedies was not required because the particular city's municipal code did not contain a procedure for appeals of the issue being considered. *Hilltop Resources* involved a city's denial of a curb-cut/driveway permit that was not administratively appealed. *Id.* at ¶ 9-11. The First District Court of Appeals rejected the city's argument because the municipal code did not authorize appeals from

denial of a curb-cut/driveway permit. Instead, the code only allowed protests from owners who objected to having to replace sidewalks or curbs or from owners who were dissatisfied with modifications authorized by the city engineer. *Id.* at ¶ 12-13.

{¶ 25} Similarly, in *Turner*, the city's property maintenance code did not contain a procedure for appeals to the city council. Instead, the code provided only for appeals to the common pleas court and some sort of suggested appeal from the decision of a housing officer; however, the code provided no procedures for such an appeal. *Turner* at ¶ 14-15 (housing officer sent a notice of a housing violation to the property owner and gave her a period of time to abate nuisances or work with the city on a schedule to do so; the city also adopted a resolution restating the nuisance conditions and gave the property owner additional time to abate). *See also Turner v. Englewood*, 191 Ohio App.3d 1, 2010-Ohio-5881, 944 N.E.2d 731, ¶ 5 (2d Dist.) (discussing our prior decision in *Turner* and noting landowner's lack of remedies). Furthermore, the landowner had no ability to appeal to the common pleas court from the city council's resolution, because the resolution was not a quasi-judicial order. *Turner*, 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431, at ¶ 16-18.

{¶ 26} In contrast to *Hilltop* and *Turner,* the Troy ordinances do contain an avenue for administrative appeals and hearings. Procedures for appeals are detailed in T.C.O. 1137.07, which states in subsection (a) that "[a]n appeal from a decision of the Zoning Administrator with respect to the interpretation or application of this Zoning Code may be taken to the Appeals Board by any person aggrieved, or by any officer, department, board, or any governmental agency or body affected by the decision of the Zoning Administrator." Appeals must be filed within 30 days of the Zoning Administrator's

decision, and are accomplished by filing a written notice of appeal with the secretary of the BZA.   T.C.O. 1137.07(b).

{¶ 27} After receiving a notice of appeal, the BZA is to select a reasonable time and place for a hearing, and must allow any party in interest to appear at the hearing by an attorney or agent.   T.C.O. 1137.07(d).   Following the hearing, the BZA "may affirm, reverse, or modify, in whole or in part, the decision appealed from, and to that end the Appeals Board shall have all the powers of the Zoning Administrator with respect to such decision. The concurring vote of a majority of the members of the Appeals Board shall be necessary to reverse or modify any decision of the Zoning Administrator under this Zoning Code.   The Appeals Board shall render a written decision on the appeal without unreasonable delay after the close of a hearing, and in all cases, within thirty (30) days after the close of the hearing."   T.C.O. 1137.07(e).

{¶ 28} Furthermore, T.C.O. 1137.05(c) states that all BZA decisions and findings "on an appeal * * * after a hearing, shall be final but in all instances shall be subject to judicial review in the manner provided in O.R.C. Chapter 2506."

{¶ 29} Again, the dispute here was not over whether Harson could place a sign on its building that exceeded the footage allowed by the ordinances.   Instead, the dispute involved whether the Zoning Inspector had correctly interpreted the ordinance.   Under these circumstances, Harson had the right to appeal the decision to the BZA, and the BZA had the ability to consider the issue.   Since Harson did not avail itself of that opportunity, the trial court correctly concluded that Harson failed to exhaust administrative remedies and was not entitled to pursue mandamus relief.

{¶ 30} Harson's second argument under this assignment of error concerns the

letter sent by the Zoning Inspector. According to Harson, even if the BZA had jurisdiction to hear the matter, the Zoning Inspector failed to give Harson reasonable notice that an administrative appeal was either available or required. As support for this assertion, Harson relies on the fact that the Zoning Inspector quoted T.C.O. 749.19(b) in the December 13, 2016 letter denying Harson's application.

{¶ 31} As was noted, this section of T.C.O.749.19 states that "[t]he BZA shall not have the authority to approve any sign with a message area exceeding that permitted by this chapter, or to permit the total message area to exceed the allowable message area permitted by this chapter. Only changes to the placement or location of a sign shall be granted by the BZA." Harson's position is that the statement in this letter actively misrepresented the right to appeal by informing Harson that it had no ability to appeal.

{¶ 32} In ruling on the motion to dismiss, the trial court acknowledged the statement in the letter. However, the court noted that the letter did not say that the BZA lacked jurisdiction over appeals alleging that the administrator had applied the wrong code section. In addition, the court stressed that Harson was required to rely on the provisions of the T.C.O. concerning appeal, not on the Zoning Administrator's statements. Doc. #19, Decision Granting Defendants' Motion to Dismiss Count Two and Three of Complaint, p. 5.

{¶ 33} In support of its position, Harson relies on our decision in *Schulte v. City of Beavercreek*, 2d Dist. Greene No. 99-CA-6, 1999 WL 812395 (Sept. 24, 1999), which involved a landowner's alleged failure to exhaust administrative remedies of appealing to the BZA and from there to the city council. *Id.* at *2. Rather than pursuing this administrative process, the landowner appealed the denial of spilt lot applications directly

to the common pleas court. In this regard, the landowner relied on Section 907 of the city's subdivision regulations, which allowed a direct appeal to the common pleas court. *Id.*

{¶ 34} We concluded that "[t]he appeal procedure set forth in the subdivision regulations is clear and unqualified: an appeal from the actions of the planning commission may be taken to the court of common pleas." *Id.* at *4. We also rejected the city's contention that the landowner should be imputed with knowledge of the administrative appeals set forth in the zoning code and city charter, and that "even though the subdivision regulations provide for a particular procedure, that procedure must be 'tempered and viewed through the prism' of the charter and the zoning regulations." *Id.* at *5.

{¶ 35} In response to the city's argument, we commented that:

The lot split that Schulte sought to accomplish was controlled by the subdivision regulations, and the subdivision regulations set forth an appeal procedure unequivocally. That procedure provided for an appeal to the court of common pleas. The fact that the subdivision regulations expressly provided for an appeal to the court of common pleas certainly implied that the proper avenue of appeal did not lie somewhere else. Thus, the city's basic tenet that a landowner cannot rely on the plain language of the subdivision regulations and, instead, has some duty to forage through all of the city ordinances and its charter to determine if any other provision might apply strikes us as disingenuous, unreasonable, and unfair. Such a requirement would indeed violate the due process rights of landowners, who

should be able to determine what is required of them in a more expeditious and more reasonable manner. The city's argument is further weakened by its continued assertion that the appeal procedure set forth in the subdivision regulations applied in some situations but did not apply to Schulte. At the hearing before the trial court, the city's attorney was unable to identify a situation in which the appeal procedure of the subdivision regulations would apply under the city's interpretation of the ordinance, and the alleged distinction between Schulte's case and others to which Section 907 would apply is certainly not apparent from the language of the subdivision regulations.

*Schulte*, 2d Dist. Greene No. 99-CA-6, 1999 WL 812395, at *5.

{¶ 36} Our comments were apt in that situation, but they do not apply here. Harson does not contend that Troy's ordinances provide more than one avenue of appeal, and that he was led to believe that a direct appeal to the common pleas court applied. Unlike the landowner in *Schulte*, Harson was specifically referred to T.C.O. 749.19, which provides that "[t]he Board of Zoning Appeals shall have authority to hear appeals and consider variance applications as provided under Chapter 1137 of the Zoning Code." T.C.O. 749.19(a). As was noted above, Chapter 1137 of the Zoning Code outlines the administrative appeal process in detail and includes a right to a hearing.

{¶ 37} It is true that the Zoning Inspector's letter referred to T.C.O. 749.19(b), which indicates that the BZA does not have authority to allow signage that exceeds the Code's requirements. This is part of the same code section as T.C.O. 749.19(a) and it would be impossible to review subsection (b) without also discovering subsection (a).

Furthermore, we interpret the reference to subsection (b) simply as the Zoning Inspector's interpretation that the requested amount of signage could not be granted because it exceeded what was allowed under T.C.O. 749.11(o). Whether this interpretation was correct is the subject of further discussion below. However, Harson did not have to "forage through" the city's ordinances to find out what appeal procedures applied; the procedures were apparent.

{¶ 38} In connection with this argument, Harson also relies again on our decision in *Turner*, 168 Ohio App.3d 41, 2006-Ohio-2667, 858 N.E.2d 431. Specifically, Harson notes our comment in *Turner* that the landowner had not been given notice of a right to a hearing. Our complete statement, however, was that the landowner "was provided with no notice of any right to a hearing or to present evidence, and Englewood's Property Maintenance Code *did not provide for a procedure to ensure these rights*." (Emphasis added.) *Id.* at ¶ 20. Unlike the code provision involved in *Turner*, T.C.O. 749.19 expressly provides for appeals to be conducted in accordance with T.C.O. Chap. 1137, and a right to a hearing is provided.

{¶ 39} There is no reason why Harson could not have appealed to the BZA, particularly since its position was that the Zoning Inspector erred in interpreting the code. If Harson had prevailed on its contrary interpretation in proceedings before the BZA, the resulting signage would not have exceeded the allowable area, and the application would have been successful. Accordingly, Harson should have pursued the administrative process and cannot proceed with requests for mandamus relief.

{¶ 40} Based on the preceding discussion, the First Assignment of Error is overruled.

## III. Did the Trial Court Err in Granting

## the Motion for Judgment on the Pleadings?

**{¶ 41}** Harson's Second Assignment of Error states that:

The Trial Court Erred in Granting Troy's Motion for Judgment on the

Pleadings and Denying Harson's Motion for Judgment on the Pleadings.

**{¶ 42}** As was noted, after the trial court dismissed Harson's mandamus claims, the court granted Troy's motion for judgment on the pleadings with respect to Harson's request for a declaratory judgment.

**{¶ 43}** Concerning this assignment of error, Harson's contention, reduced to its essence, is that T.C.O. 749.11(o) unambiguously allows the maximum allowable square footage of signage for single-tenant buildings to be separately applied to each tenant in a multi-unit building. In other words, if the maximum signage allowed is 100 square feet for single-tenant buildings with less than 250 feet of frontage, *each* tenant in a multi-unit building with less than 250 feet of frontage would *individually* be entitled to a maximum signage of 100 square feet. From this perspective, Harson's request for 37.5 square feet of signage would have been well within the 100 feet permitted to each tenant. Alternatively, Harson argues that T.C.O. 749.11(o) is ambiguous and that the trial court should have considered extrinsic evidence, including Troy's historical administration of this code section.

**{¶ 44}** The trial court concluded that T.C.O. 749.11(o) was unambiguous and permitted a maximum of only 100 square feet of signage in situations like the present, where a building has 250 feet or less of frontage.

{¶ 45} A motion for judgment on the pleadings is brought pursuant to Civ.R. 12(C). While Civ.R. 12(C) and Civ.R. 12(B)(6) use similar standards, Civ.R. 12(C) is used specifically to resolve questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. * * * Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." (Citations omitted.) *Id.* Since the review is of questions of law, we review a trial court's decision de novo. (Citation omitted.) *White v. King*, 147 Ohio St.3d 74, 2016-Ohio-2770, 60 N.E.3d 1234, ¶ 13. Again, de novo review means " 'that we apply the same standards as the trial court.' " *Carter*, 181 Ohio App.3d 764, 2009-Ohio-1769, 910 N.E.2d 1088, at ¶ 27, quoting *GNFH, Inc.*,172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16.

{¶ 46} Harson's First Claim for Relief was brought under the Declaratory Judgment Act. While Harson did not identify a particular section number of the act, R.C. 2721.03 states, in pertinent part, that "any person whose rights, status, or other legal relations are affected by a * * * municipal ordinance * * * may have determined any question of construction or validity arising under the * * * ordinance * * * and obtain a declaration of rights, status, or other legal relations under it * * *."

{¶ 47} In the First Claim for Relief, Harson requested the following declarations: (1) "that the total aggregate signage limitation in Section 749.11(o) has no application to

the Property because the Property is a multi-tenant building"; (2) "that Section 749.11(o)(2) is the signage section that applies to the Property, and that under that Section, no aggregate signage limitation exists, and each unit is entitled to have the maximum signage area calculated separately based on its building frontage"; (3) "that the Zoning Administrator's construction of Section 749.11 in considering AMK's application was incorrect and unenforceable"; and (4) "that the zoning application was within the limitations imposed by 749.11(o)(2)."   Doc. #1, p. 5, ¶ 21-24.

{¶ 48} These allegations clearly raise issues that could have been resolved in the administrative context.   The Supreme Court of Ohio has held that, before "instituting a declaratory judgment action to determine the validity of a zoning ordinance as applied to a specific parcel of property, a party ordinarily must exhaust administrative remedies." *Karches*, 38 Ohio St.3d at 17, 526 N.E.2d 1350.   As was noted, exhaustion prevents premature interference with agencies, permits agencies to correct their own errors, lets agencies give courts and parties the benefit of the agencies' experience, and allows a record to be compiled for judicial review.   *State ex rel. Teamsters Local Union 436,* 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, at ¶ 19 (Citation omitted).   "Where a party fails to exhaust available administrative remedies, allowing declaratory relief would serve 'only to circumvent an adverse decision of an administrative agency and to bypass the legislative scheme.' "   *Id.*, quoting *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 152, 586 N.E.2d 80 (1992).

{¶ 49} Ordinarily, this would mean that Harson's declaratory judgment action should have been dismissed for failure to exhaust administrative remedies.   However, the Supreme Court of Ohio held in *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 674 N.E.2d

1388 (1997), that "[t]he doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained." *Id.* at syllabus, clarifying and following *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 28 N.E.2d 395 (1975).

{¶ 50} *Jones* involved a situation like the present, as the plaintiff there brought a declaratory judgment action to resolve the meaning of a definition in a village council's zoning code. This was a non-constitutional issue. Prior to filing the declaratory judgment action, the plaintiff did not seek a use variance from the village. *Id.* at 457. After the action was filed, the village raised failure to exhaust administrative remedies and lack of subject matter jurisdiction in its answer, but did not argue these defenses in responding to the plaintiff's motion for summary judgment or in the village's own summary judgment motion. *Id.* at 457-458.

{¶ 51} The trial court granted summary judgment to the plaintiff, but the court of appeals reversed, finding that the trial court lacked subject matter jurisdiction based on the plaintiff's failure to exhaust administrative remedies. This is an issue that the court of appeals had raised sua sponte during oral argument; the parties then addressed the issue in supplemental briefs. *Id.* at 458. On further appeal to the Supreme Court of Ohio, the court concluded that "the doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained." *Id.* at 462. With respect to the particular case, the court held that the village had waived the defense. As a result, the case was remanded to the court of appeals for a decision on the proper interpretation of the zoning code. *Id.* at 463.

{¶ 52} This is essentially what occurred in the case before us. Troy's answer asserted a failure to exhaust administrative remedies as a defense, but Troy did not argue this theory to the trial court when it filed a motion for judgment on the pleadings. The trial court also did not discuss the matter in its decision on the motion for judgment on the pleadings. Accordingly, because Troy waived the affirmative defense, we will consider the merits of Harson's argument.

{¶ 53} T.C.O. 749.11(o) provides as follows:

(o) Building Signs. Attached building signs shall be in accordance with the following provisions:

(1) The total of all attached building signs shall not exceed in the aggregate the following:

| Building Level | Building Setback | Frontage | Allowable | Maximum |
|---|---|---|---|---|
| Ground Floor | Less than 100 feet | Less than 250 feet | 1.5 sq. ft./linear foot of building frontage | 100 sq. ft. |
|  | 100-300' | Less than 250 feet | 3.0 sq. ft./linear foot of building frontage | 200 sq. ft. |
|  | Over 300' | 250-500' | 3.0 sq. ft./linear foot of building frontage | 300 sq. ft. |
|  | Over 300' | Over 500' | 3.0 sq. ft./linear foot of building frontage | 400 sq. ft. |
| Upper Floors | Less than 100 feet | Any | .75 sq. ft./linear foot of building frontage | 50 sq. ft. |
|  | More than 100 feet | Any | 1.5 sq. ft./linear foot of building frontage | 100 sq. ft. |

(2) In multi-tenant buildings, each individual business will have its maximum allowable sign area calculated separately based on the amount of building frontage they occupy.

**{¶ 54}** To ascertain legislative intent, courts first look to a statute's plain language. If the meaning is " 'unambiguous and definite,' " the statute is applied as written. (Citations omitted.) *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18. " 'Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent.' " *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000), quoting *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980). The standard rules of construction are also applied to ordinances. *Gesler v. Worthington Income Tax Bd. of Appeals*, 138 Ohio St.3d 76, 2013-Ohio-4986, 3 N.E.3d 1177, ¶ 12; *Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14.

**{¶ 55}** As noted in R.C. 1.49, where statutes are ambiguous, the rules of construction include consideration of: "(A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; (F) The administrative construction of the statute."

**{¶ 56}** T.C.O. 101.03-101.08 adopt various rules of construction and refer to corresponding sections of the Ohio Revised Code. For example, T.C.O. 101.07(c), references and contains the same language as R.C. 1.49. In addition, consistent with R.C. 1.42, T.C.O. 101.03(a) states that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." *See also Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 17 (citing

R.C. 1.42 and also noting that if statutes do not define terms, the "plain and ordinary" meaning of a term controls).

{¶ 57} After reviewing T.C.O. 749.11(o), we agree with the trial court that it is unambiguous. T.C.O. 749.11(o)(1) clearly provides that the total of "all attached building signs" cannot exceed the aggregate amounts listed in the table. While "aggregate" is not defined in T.C.O. 749.11(o), it commonly means "formed by the collection of units or particles into a body, mass, or amount: collective: such as * * * c: taking all units as a whole."[1] Furthermore, as the trial court noted, "[a]ll means all, and plainly applies to both single tenant and multi-tenant buildings." Doc. #25, Decision Granting Defendants' Motion for Judgment on the Pleadings; Denying Plaintiffs' Cross-Motion for Judgment on the Pleadings, p. 4.

{¶ 58} In the case before us, there is no dispute about the fact that Harson's building had 100 feet of frontage and was set back 50 feet. Harson, therefore, fell within the first row in the table, which provides that buildings with less than 250 square feet of frontage, and set back less than 100 feet, may have 1.5 square feet of signage per linear foot of frontage, with a maximum aggregate or total of 100 square feet of signage. Thus, if only one tenant occupies a building with 100 feet of frontage, that tenant may have only total signage of 100 square feet, even though that tenant would otherwise be allowed 150 square feet (100 x 1.5 = 150). Similarly, if one tenant occupies a building with 249 feet of frontage (the maximum amount in row one), and is set back less than 100 feet, that tenant is still restricted to a total of 100 square feet of frontage, even though the tenant would otherwise be entitled to 373.5 square feet (249 x 1.5 = 373.5).

---

[1] https://www.merriam-webster.com/dictionary/aggregate, accessed on July 9, 2018.

{¶ 59} T.C.O. 749.11(o)(2) adds to T.C.O. 749.11(o)(1) by providing that for buildings with multiple tenants, each tenant's maximum frontage will be calculated separately, based on the amount of frontage the tenant occupies. This does not increase the maximum aggregate (or total) amount of square feet of signage allowed; it simply provides a way to allocate the allowed signage where more than one tenant occupies a building.

{¶ 60} Harson argues that T.C.O. 749.11(o)(2) unambiguously incorporates the entire table and calculations set forth in T.C.O. 749.11(o)(1), but transfers the object of the calculation in multi-unit buildings from the building to the businesses. According to Harson, this means that the 100 square feet of maximum signage transfers separately to each tenant. In the case before us, that would mean that Harson, an occupant of one-fourth of the building, would be entitled to 37.5 square feet of signage [1.5 (allowable square feet of signage per linear frontage) x 25 (the percentage of linear feet of frontage of the building that Harson occupied)]. This was the amount of signage Harson requested, and was within the 100 feet of potential signage that Harson claims is allowed under its interpretation of the ordinance.

{¶ 61} We disagree with this reading of the ordinance. In the first place, it makes no sense. In a multiple-tenant situation, no matter how few or how many tenants occupy a building with 100 linear feet of footage, there would never be any way to reach 100 feet of signage per tenant. The application of this maximum amount to each tenant, therefore, would be unnecessary and irrelevant.

{¶ 62} For example, if only two tenants occupy the building, each tenant could have maximum signage of 1.5 x 50 linear feet of frontage, or only 75 square feet.

Similarly, if five tenants occupied the building, each tenant would only be entitled to maximum signage of 30 square feet (20 feet x 1.5 = 30 square feet). In this scenario, there would be no reason to allow a maximum of 100 square feet for each tenant, as that figure could never be reached by any tenant in a multiple-tenant context.

{¶ 63} Admittedly, application of the 100 square feet maximum would allow each tenant to have larger signage. However, if each tenant were allowed to have signage of up to 1.5 feet times the tenant's percentage of occupation of a building, that would allow a four-tenant building, for example, to have a total of 150 square feet of signage on the building (37.5 x 4 = 150). This far exceeds the allowable amount for one tenant, and, again, makes no sense. If the city did not wish a single tenant to have signage of more than 100 square feet, there is no reason to think the city would want multiple signs that exceed 100 square feet when the frontage and setback in both situations is the same.

{¶ 64} As a final matter, the ordinance itself makes no mention of "transferring" the maximum allowance for signage to "businesses" rather than "buildings." If that were the intent, the city council could have said so.

{¶ 65} It is also true that application of the ordinance provides differing amounts of signage depending on the size of a building and its setback. For example, a building with 249 feet of frontage and a setback of 99 feet is entitled only to a maximum amount of 100 square feet of signage. As was noted, that is the same amount of signage allowed to buildings with less frontage and less setback. Furthermore, if the frontage and setback of the same building had been increased by merely one foot each, that building would be allowed double the amount of signage, i.e., a maximum of 200 square feet. Nonetheless, that does not mean the ordinance is ambiguous. These were decisions

the city council made when it enacted the city's code of ordinances.

**{¶ 66}** The Supreme Court of Ohio has stressed that "[i]t is better to leave the formulation and implementation of zoning policy to the city council, or other legislative body, which has not only the expertise and staff, but also, the constitutional responsibility to police this area effectively. * * * [A]ny city's zoning code should not be judicially amended simply because the judges of this court, or any court, would have made a different decision if they had been members of the city council." *Leslie v. City of Toledo*, 66 Ohio St.2d 488, 492, 423 N.E.2d 123 (1981). Additionally, the court commented in *Leslie* that:

> The determination of the question of whether regulations prescribed by a zoning ordinance have a real or substantial relation to the public health, safety, morals or general welfare is committed, in the first instance, to the judgment and discretion of the legislative body. Where such a judgment deals with the control of traffic, volume of traffic, burden of traffic, effect upon valuation of property, the municipal revenue to be produced for the city, expense of the improvement, land use consistent with the general welfare and development of the community as a whole, or, in short, where the judgment is concerned with what is beneficial or detrimental to good community planning, it is in the first instance a legislative and not a judicial matter. The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.

*Leslie* at 492, quoting *Willott v. Village of Beachwood*, 175 Ohio St. 557, 560, 197 N.E.2d 201 (1964). *Accord Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals*, 38 Ohio St.3d 184, 185, 527 N.E.2d 825 (1988); *Singer v. Troy*, 67 Ohio App.3d 507, 515, 587 N.E.2d 864 (2d Dist.1990).

{¶ 67} Because we have found the pertinent provisions of the code unambiguous, we need not address Harson's alternative argument that T.C.O. 749.11(o) is ambiguous. Based on the preceding discussion, the trial court did not err in granting Troy's motion for judgment on the pleadings. Accordingly, the Second Assignment of Error is overruled.

## IV. Conclusion

{¶ 68} All of Harson's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Michael P. McNamee
Gregory B. O'Connor
Grant D. Kerber
Hon. Jeannine N. Pratt