[Cite as *Tankersley v. Ohio Fair Plan Underwriting Assn.*, 2018-Ohio-4386.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

JAMES TANKERSLEY, et al.,                :        CASE NO. CA2018-01-003

    Plaintiffs-Appellants,                :        O P I N I O N
                                                   10/29/2018
                                               :

  - vs -                :

                                                   :

OHIO FAIR PLAN UNDERWRITING                :
ASSOCIATION, et al.,

                                                   :

    Defendants-Appellees.                :

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016 CVH 1033

The Law Offices of Blake R. Maislin, LLC, Randy A. Byrd, Maislin Professional Center, 2260 Francis Lane, Cincinnati, OH 45206, for plaintiffs-appellants, James and Barbara Tankersley

Marshall Dennehey Warner Coleman & Googin, David J. Oberly and Ray C. Freudiger, 312 Elm Street, Suite 1850, Cincinnati, OH 45202, for defendants-appellees, Fogel Insurance Agency, Inc. and Mark Gottesman

Crabbe, Brown & James, LLP, Matthew R. Planey, 500 South Front Street, Suite 1200, Columbus, OH 43215, for defendant-appellee, Ohio Fair Plan Underwriting Association

      **M. POWELL, J.**

    **{¶ 1}**   Plaintiffs-appellants, James and Barbara Tankersley, appeal a decision of the

Clermont County Court of Common Pleas dismissing their complaint against defendant-

appellee, Ohio Fair Plan Underwriting Association ("Ohio Fair Plan"), and granting summary judgment in favor of defendants-appellees, Fogel Insurance Agency ("Fogel Insurance") and one of its employees, insurance agent Mark Gottesman ("Gottesman").

{¶ 2} Ohio Fair Plan is an entity created by the Ohio Legislature in 1969 "to assure the availability of property insurance for property that is not otherwise insurable in the normal insurance market." *Soehnlen v. Fabe*, 10th Dist. Franklin No. 91AP-924, 1992 Ohio App. LEXIS 1777, *9 (Mar. 31, 1992); *Ohio Fair Plan Underwriting Assn. v. Reese*, 17 Ohio App.3d 54 (8th Dist.1984). Ohio Fair Plan consists of all insurers authorized to write basic property insurance within Ohio. It is governed by R.C. 3929.41 through 3929.49 and is bound by the administrative rule set forth in Ohio Adm.Code 3901-1-18.

## I. FACTS AND PROCEDURE

{¶ 3} On June 13, 2015, Barbara Tankersley ("Barbara") contacted Gottesman to obtain insurance for two residential properties she and her husband James owned. The first property was located on Ruth Lane in Bethel, Ohio (the "Ruth Lane property") and was the Tankersleys' primary residence. The other property was located on El Vista Drive in Cleves, Ohio (the "El Vista property"). Gottesman obtained the requisite information for the insurance applications from Barbara, including the Tankersleys' primary mailing address, a post office box address in Cincinnati, Ohio. Gottesman advised Barbara that her only insurance option was through Ohio Fair Plan as both properties had not been insured in the prior three years.

{¶ 4} On June 15, 2015, Gottesman met Barbara at the El Vista property, where he walked around the property and took photographs. Gottesman advised Barbara that Ohio Fair Plan may require certain repairs be made before it would issue coverage. Barbara understood that Ohio Fair Plan would inspect both properties prior to issuing coverage and that coverage would be cancelled if required repairs were not made. Barbara gave

- 2 -

Gottesman a $1,306 check payable to Fogel Insurance, representing the estimated insurance premium for the properties for one year. Gottesman advised Barbara that she should look for the properties' insurance policies to arrive in the mail.

{¶ 5} Gottesman visited the Ruth Lane property by himself later that day. Upon noticing that a vehicle with a flat tire was parked in the driveway, Gottesman called Barbara and inquired whether the property was vacant. Barbara advised that James lived there. Gottesman advised Barbara that several repairs would need to be made.

{¶ 6} Gottesman submitted the insurance coverage application for the El Vista property to Ohio Fair Plan on June 15, 2015, and a similar application for the Ruth Lane property to Ohio Fair Plan on June 17, 2015. Both applications were initialed by the Tankersleys, included their post office box address, and emphasized it was their main mailing address.

{¶ 7} The applications advised the Tankersleys, "DO NOT ASSUME COVERAGE IS BEING PROVIDED," and that Ohio Fair Plan would notify them "when coverage is provided, the effective date of the coverage and the amount of coverage being provided." The applications further advised that each property would be inspected to determine eligibility for insurance; once the "inspection has been completed, it will be reviewed for binder cancellation or policy issuance;" and the Tankersleys would be notified in writing if an adverse action was taken because of the inspection. The applications further provided that Gottesman had informed the Tankersleys that he was not an agent of Ohio Fair Plan and that he had "no authority to bind [Ohio Fair Plan] to any insurance or otherwise bind the [Ohio Fair Plan] in any manner." The applications included the Tankersleys' acknowledgment that Gottesman was not an agent of Ohio Fair Plan and that he had no authority to bind Ohio Fair Plan to provide insurance.

{¶ 8} Regarding the El Vista property, the Tankersleys received a notice of repairs,

two separate fire insurance policy binders, and the insurance policy issued for the property. Regarding the Ruth Lane property, the Tankersleys only received a temporary insurance binder. The binder was accompanied by a cover letter stating, "Ohio FAIR Plan needs an inspection of your property before any policy can be issued. The binder coverage is provided pending our review of an inspection report, which will allow final eligibility to be determined." All documents were received by the Tankersleys at their post office box address. The Tankersleys never received an insurance policy for the Ruth Lane property and never advised Gottesman of the fact or called Ohio Fair Plan to inquire.

{¶ 9} On July 24, 2015, Ohio Fair Plan sent a notice of cancellation of the insurance for the Ruth Lane property to the Tankersleys at their post office box address. The notice informed the Tankersleys that inspection of the property had revealed that several specified repairs were necessary, and that cancellation was effective on August 31, 2015. The notice further stated that a refund of the premium would be mailed after the cancellation effective date. On that same day, Ohio Fair Plan electronically notified Gottesman of the cancellation and indicated that the notice would be mailed directly to the Tankersleys by Ohio Fair Plan.

{¶ 10} Upon receiving Ohio Fair Plan's email, Gottesman called Barbara to inform her of the cancellation regarding the Ruth Lane property. Unable to reach Barbara, Gottesman left her a voicemail message, informing her that the policy had been cancelled and specifying the necessary repairs included in the notice of cancellation. Barbara never called him back. In September 2015, Ohio Fair Plan issued a refund check for $447. Gottesman testified in his deposition that following cancellation of an insurance policy, a refund check is typically sent to the insurance agency which then sends it to the insured. Gottesman could find no evidence that the refund check was received by Fogel Insurance, but stated that if it had been, it would have been immediately forwarded to the Tankersleys at their post office box address.

**{¶ 11}** The Tankersleys denied receiving the notice of cancellation or the refund check regarding the Ruth Lane property. On February 18, 2016, a fire damaged the Ruth Lane property. Upon calling Ohio Fair Plan regarding the fire, Barbara was informed that there was no insurance coverage on the property. Barbara then called Gottesman who confirmed the information provided by the representative from Ohio Fair Plan. Barbara informed him that she had never received the cancellation notice or the refund check.

**{¶ 12}** Subsequently, the Tankersleys filed a fire claim with Ohio Fair Plan. In March 2016, the Ohio Fair Plan denied the claim, finding there was no coverage in place for the Ruth Lane property at the time of the fire.

**{¶ 13}** On July 22, 2016, the Tankersleys filed a complaint against Ohio Fair Plan, Fogel Insurance, and Gottesman, alleging breach of contract, bad faith, common law fraud and deceit, negligent hiring and retention, and respondeat superior, and requesting a declaratory judgment that Ohio Fair Plan be "obligated under the policy to pay the fire loss coverage."[1] The Tankersleys alleged that they were not properly and timely notified of the cancellation of the insurance policy for the Ruth Lane property and that the refund check was fraudulently concealed by Gottesman acting on behalf of Ohio Fair Plan and Fogel Insurance. The Tankersleys further asserted that the statutory administrative appeal process was "futile because [Ohio Fair Plan] contends that the policy is no longer in effect."

**{¶ 14}** Ohio Fair Plan moved to dismiss the complaint under Civ.R. 12(B)(1) and 12(B)(6), arguing that the Tankersleys' failure to exhaust administrative remedies both deprived the trial court of subject matter jurisdiction and prevented them from stating a claim upon which relief may be granted. On January 27, 2017, the trial court denied Ohio Fair

---

1. In their complaint, the Tankersleys alleged common law fraud and deceit against all three defendants, and breach of contract, bad faith, negligent hiring and retention, respondeat superior, and declaratory judgment solely against Ohio Fair Plan.

Plan's Civ.R. 12(B)(1) motion but granted its Civ.R. 12(B)(6) motion. The trial court found that in light of the Tankersleys' admission in their complaint that they had not exhausted administrative remedies prior to filing the complaint, they failed to state a claim upon which relief can be granted.

{¶ 15} Fogel Insurance and Gottesman subsequently moved for summary judgment regarding the Tankersleys' common law fraud and deceit claim. On December 20, 2017, the trial court granted the summary judgment motion, finding there were no genuine issues of material fact as to three elements of the claim, to wit, representation or concealment of fact, intent to mislead, and justifiable reliance.

{¶ 16} The Tankersleys now appeal, raising two assignments of error.

## II. ANALYSIS

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS-APPELLANTS, BY ERRONEOUSLY GRANTING THE MOTION TO DISMISS FILED BY DEFENDANT OHIO FAIR PLAN UNDERWRITING ASSOCIATION.

{¶ 19} The Tankersleys argue the trial court erred in dismissing their complaint against Ohio Fair Plan pursuant to Civ.R. 12(B)(6). The Tankersleys present two issues for review. First, the Tankersleys assert they were not required to exhaust administrative remedies prior to filing their complaint because exhaustion of administrative remedies is required neither for a declaratory judgment action nor when exhaustion would be futile. Second, the Tankersleys assert the trial court erred in dismissing their claims of negligent hiring and retention and respondeat superior against Ohio Fair Plan because Gottesman and Fogel Insurance were agents of Ohio Fair Plan, and therefore, Ohio Fair Plan is liable for their actions.

- 6 -

**A. Ohio Fair Plan's Civ.R. 12(B)(6) Motion to Dismiss**

{¶ 20} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *Klan v. Med. Radiologists, Inc.*, 12th Dist. Warren No. CA2014-01-007, 2014-Ohio-2344, ¶ 12. "[W]hen a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Byrd v. Faber*, 57 Ohio St.3d 56, 60 (1991). In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6), it must appear beyond a reasonable doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14. The court may look only to the complaint to determine whether the allegations are legally sufficient to state a claim. *Klan* at ¶ 12. A reviewing court conducts a de novo review of a trial court's decision on a motion to dismiss. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

**1. Whether the Tankersleys Failed to Exhaust Administrative Remedies**

{¶ 21} The exhaustion-of-administrative-remedies doctrine is a well-established principle of Ohio law. *Nemazee v. Mt. Sinai Medical Ctr.*, 56 Ohio St.3d 109, 111 (1990). The doctrine requires that a party exhaust available administrative remedies through administrative appeal prior to seeking court action in an administrative matter. *Id.*

{¶ 22} The failure to exhaust administrative remedies is an affirmative defense. *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 462 (1997). Generally, affirmative defenses cannot be raised in a Civ.R. 12(B)(6) motion because they require reference to materials outside the complaint. *Reasoner v. Columbus*, 10th Dist. Franklin No. 02AP-831, 2003-Ohio-670, ¶ 12. An exception exists, however, when the existence of the affirmative defense is obvious from the face of the complaint itself. *Id.*

{¶ 23} As stated above, Ohio Fair Plan is governed by R.C. 3929.41 through 3929.49 and is bound by the administrative rule set forth in Ohio Adm.Code 3901-1-18. R.C. 3929.47 and Ohio Adm.Code 3901-1-18(J) provide that (1) a party may appeal any action or decision of the Ohio Fair Plan to the Ohio Fair Plan Board of Governors; (2) the party may then appeal any action or decision of the Board of Governors to the Superintendent of Insurance of the state of Ohio; and (3) the decision of the Superintendent of Insurance is a final order subject to judicial review as provided in R.C. Chapter 119.

{¶ 24} By the plain language of the statute and administrative rule, the Tankersleys were required to exhaust all available administrative remedies prior to filing their complaint against Ohio Fair Plan. Given their allegation in their complaint that exhaustion of administrative remedies was futile, it is obvious from the face of the complaint that they failed to exhaust administrative remedies, and the trial court properly so found.

**2. Whether the Tankersleys Were Required to Exhaust Administrative Remedies**

{¶ 25} The Tankersleys, however, argue that exhaustion of administrative remedies is neither required for a declaratory judgment action nor when exhaustion would be futile.

{¶ 26} In support of their argument that exhaustion of administrative remedies is not required when declaratory relief is sought, the Tankersleys cite two decisions from the Ohio Supreme Court, *Chagrin Falls*, 77 Ohio St.3d 456, and *Driscoll v. Austintown Associates*, 42 Ohio St.2d 263 (1975). We find that these cases are not applicable. *Driscoll* limited the exception to the exhaustion doctrine to cases in which the declaratory judgment action seeks a declaration that a statute or administrative rule is unconstitutional. The Tankersleys do not allege in their complaint that any statute or administrative rule is unconstitutional. *Chagrin Falls* simply held that "the doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action[.]" *Chagrin Falls* at 462. The trial court denied Ohio Fair Plan's Civ.R. 12(B)(1) motion to dismiss on the basis of *Chagrin*

*Falls*.

**{¶ 27}** The Ohio Supreme Court has held, "It is well settled that '[a] person entitled * * * to appeal [an administrative order] is not entitled to a declaratory judgment where failure to exhaust administrative remedies is asserted and maintained.'" *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. Of Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, ¶ 23, quoting *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304 (1981), paragraph three of the syllabus. "Where a party fails to exhaust available administrative remedies, allowing declaratory relief would serve 'only to circumvent an adverse decision of an administrative agency and to bypass the legislative scheme.'" *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 8th Dist. Cuyahoga No. 100684, 2014-Ohio-2537, ¶ 39, quoting *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 152 (1992). Under this general rule, the Tankersleys were not entitled to pursue their action for declaratory judgment, having failed to first exhaust administrative remedies. *See Teamsters*.

**{¶ 28}** The Tankersleys nevertheless assert that they were not required to exhaust their administrative remedies because doing so would have been futile as Ohio Fair Plan did not have the authority to award them the monetary damages they sought.

**{¶ 29}** "It is true that parties need not pursue administrative remedies if doing so would be futile or a vain act." *Teamsters*, 2012-Ohio-1861 at ¶ 24. "A 'vain act' occurs when an administrative body lacks the authority to grant the relief sought; a vain act does not entail the petitioner's probability of receiving the remedy. The focus is on the *power* of the administrative body to afford the requested relief, and not on the happenstance of the relief being granted." (Emphasis sic.) *Nemazee*, 56 Ohio St.3d at 115. Hence, the Tankersleys' participation in Ohio Fair Plan's administrative process would constitute a vain act only if Ohio Fair Plan had no authority to grant the relief they sought.

**{¶ 30}** Ohio Fair Plan denied the Tankersleys' fire claim for the Ruth Lane property

on the ground there was no insurance coverage at the time of the fire, the policy having been cancelled due to a lack of necessary repairs to the property. In their complaint, the Tankersleys alleged that the policy was improperly cancelled and should have been in effect at the time of the fire. While they sought monetary damages in most of their claims against Ohio Fair Plan, these claims and damages were dependent upon their allegation they were denied coverage for the fire loss based upon Ohio Fair Plan's improper cancellation of the policy insurance.

{¶ 31} As stated above, R.C. 3929.47 and Ohio Adm.Code 3901-1-18(J) allow a party to appeal *any action or decision* of the Ohio Fair Plan to the Ohio Fair Plan Board of Governors, and then to appeal *any action or decision* of the Board of Governors to the Superintendent of Insurance. Nothing prevented the Tankersleys from challenging the invalidity of the policy cancellation to the Board of Governors and then to the Superintendent of Insurance. Had they availed themselves of the administrative appeal process, Ohio Fair Plan's determination that the policy had been cancelled could have been reversed, which in turn, would have afforded the Tankersleys the exact relief they sought. We therefore hold that the Tankersleys' participation in the administrative appeal process would not have been a vain act.

{¶ 32} In light of the foregoing, the trial court did not err in dismissing the Tankersleys' complaint against Ohio Fair Plan for failure to exhaust available administrative remedies.

### 3. Whether Gottesman and Fogel Insurance Were Agents of Ohio Fair Plan

{¶ 33} The Tankersleys next argue that the trial court erred in dismissing their claims of negligent hiring and retention and respondeat superior against Ohio Fair Plan under Civ.R. 12(B)(6) because Gottesman and Fogel Insurance were agents of Ohio Fair Plan, and therefore, Ohio Fair Plan is liable for their actions. Specifically, the Tankersleys assert

that express, implied, or apparent authority was conferred upon Gottesman and Fogel Insurance by virtue of the fact they accepted the Tankersleys' premium check and consequently improperly withheld the refund check.

{¶ 34} As stated above, a court cannot rely upon evidence outside of the complaint when considering a Civ.R. 12(B)(6) motion to dismiss. *Klan,* 2014-Ohio-2344 at ¶ 12. However, "[m]aterial incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6) motion to dismiss." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247 (1997), 249, fn. 1. "'If the plaintiff decides to attach documents to his complaint, which he claims establish his case, such documents can be used to his detriment to dismiss the case if they along with the complaint itself establish a failure to state a claim.'" *Johnson v. Baker*, 5th Dist. Stark No. 2017CA00202, 2018-Ohio-617, ¶ 12, quoting *Adlaka v. Giannini*, 7th Dist. Mahoning No. 05 MA 105, 2006-Ohio-4611, ¶ 34.

{¶ 35} Ohio Adm.Code 3901-1-18(E)(1) provides that "[u]pon request, a licensed agent shall assist any owner of property in completing an application for insurance with the association." However, Ohio Adm.Code 3901-1-18(E)(2) further provides, "No licensed agent, although licensed to represent one or more member insurers of the association, shall hold himself out as an agent of the association or *have any authority to bind any risk for the association*." (Emphasis added.) The term "association," as used throughout Ohio Adm.Code 3901-1-18, means Ohio Fair Plan. Ohio Adm.Code 3901-1-18(C)(1). Thus, as a matter of law, there is no agency relationship between a licensed insurance agent who assists an owner in completing an application for insurance and Ohio Fair Plan. Ohio Adm.Code 3901-1-18(E)(2).

{¶ 36} Attached to the Tankersleys' complaint is the Condensed Fire Insurance Application for the El Vista property. There is no application or policy for the Ruth Lane

property attached to the complaint. However, the complaint alleges that the policy language in the attached Condensed Application for the El Vista property is "the same for both parcels."

{¶ 37} As applicable here, the "Applicant Warranty" section of the application provides in pertinent part that "[i]n making this application for insurance with [Ohio Fair Plan], I (we) understand that * * * [t]he producer/agent is not an agent of [Ohio Fair Plan] or of any insurer for purposes of the application and has no authority to bind insurance." This section of the application concludes with the Tankersleys' acknowledgment that they "have read the entire validated application and warranty and agree that the information is correct to the best of [their] knowledge."

{¶ 38} The "Producer/Agent Warranty" section of the application further provides that the producer/agent "specifically informed the Applicant that I am not an agent of [Ohio Fair Plan] * * * for purposes of this application and that I have no authority to bind [Ohio Fair Plan] to any insurance or otherwise bind [Ohio Fair Plan] in any manner." This section then states, "I have also explained to the Applicant that I am acting as the applicant's agent."

{¶ 39} The foregoing shows that neither Gottesman nor Fogel Insurance were agents of Ohio Fair Plan. Rather, as a matter of law, they were expressly considered without authority to bind risk on behalf of Ohio Fair Plan. The Tankersleys had notice that Gottesman and Fogel Insurance were not acting for Ohio Fair Plan. The warranties contained in the application, and the Tankersleys' acknowledgment of the same, negate any claim of actual or apparent authority to act on behalf of Ohio Fair Plan or that Ohio Fair Plan is liable for the acts or omissions of Gottesman and Fogel Insurance.

{¶ 40} In light of the foregoing, the trial court did not err in dismissing the Tankersleys' claims of negligent hiring and retention and respondeat superior against Ohio Fair Plan under Civ.R. 12(B)(6).

{¶ 41} The Tankersleys' first assignment of error is overruled.

{¶ 42} Assignment of Error No. 2:

{¶ 43} THE TRIAL COURT ERRED, TO THE SUBSTANTIAL PREJUDICE OF THE PLAINTIFFS, BY GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT FOGEL INSURANCE AGENCY, INC. AND MARK GOTTESMAN.

{¶ 44} The Tankersleys argue that the trial court erred in granting summary judgment in favor of Gottesman and Fogel Insurance with respect to their common law fraud and deceit claim. The Tankersleys assert there are genuine issues of material fact as to whether Gottesman and Fogel Insurance (1) were agents of Ohio Fair Plan in their dealings with the Tankersleys concerning property insurance for the Ruth Lane property, (2) failed to timely and properly notify the Tankersleys of the cancellation of the insurance policy for the Ruth Lane property, and (3) fraudulently concealed and withheld the refund check.

**B. Gottesman and Fogel Insurance's Motion for Summary Judgment**

{¶ 45} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, show that (1) there is no genuine issue of any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 46} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once this burden is met, the nonmoving party may

- 13 -

not rest upon the mere allegations or denials of the pleadings, but must supply evidentiary materials setting forth specific facts showing there is a genuine issue of material fact for trial. *Puhl v. U.S. Bank, N.A.*, 12th Dist. Butler No. CA2014-08-171, 2015-Ohio-2083, ¶ 13. Summary judgment is proper if the nonmoving party fails to set forth such facts. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Palmer v. Mossbarger*, 12th Dist. Madison No. CA2014-04-011, 2015-Ohio-231, ¶ 13.

{¶ 47} Gottesman and Fogel Insurance attached several exhibits to their motion for summary judgment, including Barbara's deposition, her responses to requests for admission, the Tankersleys' insurance application for the Ruth Lane property, Gottesman's affidavit, and Ohio Fair Plan's cancellation notice for the Ruth Lane property. The record also includes Gottesman's deposition. Attached exhibits to Barbara's deposition included the insurance policy for the El Vista property, Ohio Fair Plan's cover letter and temporary insurance binder for the Ruth Lane property, Ohio Fair Plan's cancellation notice mailed to the Tankersleys at their post office box address, Ohio Fair Plan's email to Gottesman informing him of the cancellation, and the refund check made payable to the Tankersleys.

{¶ 48} In order to prevail on a fraudulent misrepresentation or concealment claim, the Tankersleys were required to establish all of the following elements: (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such other disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Cliff v. Loudenslager*, 12th Dist. Clermont No. CA2006-01-002, 2006-Ohio-5844, ¶ 15; *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987). The trial court

granted summary judgment to Gottesman and Fogel Insurance, finding there were no genuine issues of material fact as to representation or concealment of a fact, intent to mislead the Tankersleys, and justifiable reliance by the Tankersleys.

### 1. Whether Gottesman and Fogel Insurance Were Agents of Ohio Fair Plan

{¶ 49} The Tankersleys argue the trial court erred in granting summary judgment to Gottesman and Fogel Insurance because there is a genuine issue of material fact as to whether the latter were agents of Ohio Fair Plan with apparent authority to bind it. The Tankersleys reiterate the argument they made in their first assignment of error.

{¶ 50} For the reasons discussed in response to the first assignment of error, we find that pursuant to Ohio Adm.Code 3901-1-18(E)(2) and the "Application Warranty" and "Producer/Agent Warranty" sections of the insurance application for the Ruth Lane property, Gottesman and Fogel Insurance were not agents of Ohio Fair Plan as a matter of law and were expressly considered without authority to bind Ohio Fair Plan.

{¶ 51} By initialing the application before it was submitted by Gottesman on June 17, 2015, the Tankersleys had notice that Gottesman and Fogel Insurance were not agents of Ohio Fair Plan and could not bind it. *Soehnlen*, 1992 Ohio App. LEXIS 1777 at * 12, 18; *Carter v. Harris*, 8th Dist. Cuyahoga No. 56035, 1989 Ohio App. LEXIS 5094, *8 (Nov. 2, 1989). Gottesman did not testify to the contrary. Rather, his affidavit plainly states, "At no time did I ever maintain any authority to extend or cancel coverage on behalf of Ohio Fair Plan. Likewise, at no time did I ever maintain any authority to bind Ohio Fair Plan in any respect." In her deposition, Barbara acknowledged the foregoing "Producer/Agent Warranty" section of the application and never claimed Gottesman held himself out as either an agent of Ohio Fair Plan or with the authority to bind it.

{¶ 52} The Tankersleys' argument that Gottesman and Fogel Insurance were agents of Ohio Fair Plan with authority, apparent or otherwise, to bind it is therefore without

merit.

**2. Whether Gottesman and Fogel Insurance Failed to Timely and Properly Notify The Tankersleys of the Cancellation of the Insurance Policy for The Ruth Lane Property**

{¶ 53}   The Tankersleys argue the trial court erred in granting summary judgment to Gottesman and Fogel Insurance because there is a genuine issue of material fact as to whether Gottesman and Fogel Insurance failed to timely and properly notify them of the cancellation of the insurance policy for the Ruth Lane property.  The argument is based upon the Tankersleys' allegations in their complaint that in giving Gottesman a $1,306 check payable to Fogel Insurance on June 15, 2015, representing the estimated insurance premium for both the El Vista and Ruth Lane properties for one year, the Tankersleys "satisfied all conditions precedent of their obligations under the insurance contract," and therefore, the insurance policy for the Ruth Lane property was in place and in good standing from June 15, 2015, until the February 18, 2016 fire.  The Tankersleys further assert that Gottesman represented to them that the Ruth Lane property had insurance coverage.

{¶ 54}   There is no evidence that Gottesman represented to the Tankersleys that the Ruth Lane property had insurance coverage prior to the fire on February 18, 2016.  Barbara admitted this in her response to request for admissions, and further testified that between July 24, 2015, the date of the cancellation notice, and the fire, neither Gottesman nor Fogel Insurance told them there was insurance coverage for the Ruth Lane property.  Gottesman's affidavit avers that at no time prior to the fire, did he make representations to the Tankersleys concerning insurance coverage for the Ruth Lane property or tell them that the property was covered by Ohio Fair Plan.

{¶ 55}   In her deposition, Barbara testified that Gottesman's misrepresentation occurred after the fire when he told her there was no coverage for the Ruth Lane property, when in fact there was coverage as shown by the parties' exhibits.  However, the application

for the Ruth Lane property, initialed by the Tankersleys, plainly advised them, "An [Ohio Fair Plan] underwriter will review the application for binder coverage. DO NOT ASSUME COVERAGE IS BEING PROVIDED. [Ohio Fair Plan] will notify you when coverage is provided, the effective date of the coverage and the amount of coverage being provided." The application further advised that the property would be inspected to determine eligibility for insurance; once the "inspection has been completed, it will be reviewed for binder cancellation or policy issuance;" and the Tankersleys would be notified in writing if an adverse action was taken because of the inspection.

{¶ 56} In her deposition, Barbara acknowledged that unlike for the El Vista property, she never received a notice of repairs or an insurance policy for the Ruth Lane property. Rather, she only received a temporary insurance binder. The binder was accompanied by a cover letter stating, "Ohio FAIR Plan needs an inspection of your property before any policy can be issued. The binder coverage is provided pending our review of an inspection report, which will allow final eligibility to be determined." Moreover, the binder itself stated, "Reason for Binder: Waiting For Inspection, Money, Or Both."

{¶ 57} Gottesman testified that upon meeting with Barbara, he advised her that both properties would be inspected and that Ohio Fair Plan may require certain repairs be made before it would issue coverage. After visiting the Ruth Lane property on his own, Gottesman contacted Barbara about a van parked in the driveway with a flat tire. During the phone call, Gottesman advised Barbara that Ohio Fair Plan would inspect both properties before making a final decision on whether to extend coverage for each property. He further advised her that the Ruth Lane property needed several specific repairs before it would be insured. Gottesman further testified Ohio Fair Plan would not issue coverage until any repairs identified by its inspections would be made.

{¶ 58} During her deposition, Barbara did not dispute these facts and acknowledged

that Gottesman specifically identified several needed repairs for the Ruth Lane property, that they matched the repairs listed in the cancellation notice, and that those repairs were not made during the summer of 2015. She further acknowledged that she knew Ohio Fair Plan would inspect the Ruth Lane property and may require repairs before it would insure the property. Barbara understood that coverage would be cancelled if required repairs were not made.

{¶ 59} The trial court, therefore, did not err in finding there was no genuine issue of material fact as to whether Gottesman fraudulently represented to the Tankersleys that the Ruth Lane property was insured by Ohio Fair Plan prior to the fire.

{¶ 60} As to Gottesman's alleged concealment of the notice of cancellation from the Tankersleys, we reiterate that Gottesman was not an agent of Ohio Fair Plan and had no authority to bind it. Thus, Gottesman had no authority to issue an insurance policy for the Ruth Lane property or bind coverage for the property, or an obligation to send the Tankersleys notice of the cancellation. *See Hanacek v. Grange Mut. Cas. Co.*, 8th Dist. Cuyahoga No. 51016, 1986 Ohio App. LEXIS 8658 (Oct. 9, 1986); *Rainsford v. Royalty Ins. Co.*, 4th Dist. Athens No. 1363, 1988 Ohio App. LEXIS 223 (Jan. 22, 1988).

{¶ 61} Barbara testified that with the exception of a letter Gottesman sent her in July 2015 asking them to initial an application, all mail and documents received at their post office box address regarding insurance for either property came directly from Ohio Fair Plan, and not from Gottesman. The Tankersleys were therefore on a direct relationship with Ohio Fair Plan. *See Hanacek.* On the day Ohio Fair Plan sent a notice of cancellation of the insurance for the Ruth Lane property to the Tankersleys at their post office box address, it also electronically notified Gottesman of the cancellation and indicated that the notice would be mailed directly to the Tankersleys by Ohio Fair Plan. Although Gottesman was not required to inform the Tankersleys of the cancellation, he nevertheless attempted to notify

them by calling Barbara. Unable to reach her, Gottesman left a voicemail informing them of the cancellation. Barbara has not denied receiving that voicemail.

{¶ 62} The trial court therefore did not err in finding there was no genuine issue of material fact as to whether Gottesman and Fogel Insurance failed to timely and properly notify the Tankersleys of the cancellation of the insurance policy for the Ruth Lane property.

{¶ 63} We further find there is no evidence that any alleged misrepresentation or concealment by Gottesman was made with the intent to mislead the Tankersleys into relying upon it. Likewise, there is no evidence that the Tankersleys justifiably relied upon Gottesman's alleged concealment of the cancellation of the coverage for the Ruth Lane property. Barbara was aware that the Ruth Lane property needed several specific repairs and that no repairs were made in the summer of 2015. She was further aware that in contrast to the documents she had received for the El Vista property from Ohio Fair Plan, she had only received a temporary insurance binder for the Ruth Lane property.

### 3. Whether Gottesman and Fogel Insurance Fraudulently Concealed and Withheld the Refund Check

{¶ 64} The Tankersleys argue the trial court erred in granting summary judgment to Gottesman and Fogel Insurance because there is a genuine issue of material fact as to whether the latter fraudulently concealed and withheld the refund check.

{¶ 65} Ohio Fair Plan issued a $447 refund check, payable to the Tankersleys, in September 2015. Attached as an exhibit to Barbara's deposition is what appears to be a carbon copy of the check. Gottesman testified that when a refund check is sent to the insurance agency following cancellation of an insurance policy, "[i]t is the longstanding and strictly followed practice of my office * * * to immediately forward all checks directly to the insured at the time a check is received by my office." Gottesman testified he did not learn the Tankersleys never received the refund check until Barbara called him about the fire.

Subsequently, he undertook a review of his files regarding the Tankersleys but could find no evidence that the refund check was received by Fogel Insurance. Gottesman stated, however, that if the check had been received by Fogel Insurance, it would have been immediately forwarded to the Tankersleys at their post office box address. In his affidavit, Gottesman denied "ever retain[ing] possession of the check for any period of time, or otherwise conceal[ing] the existence of the check in any manner." Gottesman further testified that once he became aware the Tankersleys did not receive the check, he immediately contacted Ohio Fair Plan and asked that a new refund check be issued to the Tankersleys.

{¶ 66} The Tankersleys assert the refund check was fraudulently concealed and withheld simply because they never received it and Gottesman has no written proof he or Fogel Insurance sent them the check. In her deposition, Barbara denied receiving the refund check before the fire and simply testified she never received the check. Under the applicable standard of review and construing the evidence most favorably for the nonmoving party, we find that Gottesman and Fogel Insurance satisfied their initial burden for summary judgment and that the Tankersleys failed to meet their reciprocal burden under Civ.R. 56. As this court has stated previously, the evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions. *Barich v. Scheidler Med. Group, L.L.C.*, 12th Dist. Butler No. CA2015-01-004, 2015-Ohio-4446, ¶ 13. A nonmovant's self-serving assertions, whether made in an affidavit, deposition, or interrogatory responses, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. *Id.*

{¶ 67} Given the evidence in the record, we find that reasonable minds could only conclude that Gottesman and Fogel Insurance were entitled to summary judgment. The trial court, therefore, did not err in granting summary judgment to Gottesman and Fogel

Insurance with respect to the Tankersleys' common law fraud and deceit claim.

{¶ 68} The Tankersleys' second assignment of error is overruled.

{¶ 69} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.